## CITY OF SAN ANTONIO V. SULLIVAN.

### Decided May 2, 1900.

**1.  Dedication of Streets—Acceptance by City—Evidence.**

In an action against a city for land claimed by it to have been dedicated as streets, proof of the city ordinances prescribing the manner in which the streets may be dedicated and accepted by the city is admissible to show that there was never a statutory dedication of the land to street purposes.

**2.  Same—Facts Not Showing Dedication.**

The owners of land lying within the limits of a city had it surveyed and divided into blocks, lots, streets, and alleys, and a map made thereof, but it was never recorded in the office of the city engineer or elsewhere, nor exhibited to the city authorities or to the public, nor were the streets shown thereon ever thrown open to the public. The owners afterwards made two deeds of portions of the land describing the property therein as bounded by the streets shown on the map; and another map made of the city, and purchased by the city as the official map, delineated all the subdivisions made in the survey, but by what authority did not appear. Held, that the evidence did not show an express dedication of the streets and its acceptance by the city, nor an implied dedication and acceptance by the public.

**3.  Same—Injunction Warranted.**

Where, in trespass to try title and to enjoin defendant from interfering with plaintiff's possession of the land, defendant's answer admits that it had entered upon the land in an effort to enforce the right claimed by it to open certain streets alleged to be thereon, it was unnecessary for plaintiff, upon making proof that entitled him to recover the land, to make any further proof in order to be entitled to the injunction asked.

APPEAL from Bexar.  Tried below before Hon. J. L. CAMP.

*George C. Altgelt,* for appellant.

*Ogden & Terrell,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought on the 21st day of March, 1898, by the appellee, D. Sullivan, against the city of San Antonio, in the form of an action of trespass to try title to recover all of original city lot No. 9, range 2, district 1, of Bexar County, Texas, except a strip of about thirty feet wide lying outside of the city limits, and

the right of way of the Galveston, Harrisburg & San Antonio Railway Company running through said lot. The land excepted is particularly described by exhibits attached to the plaintiff's petition. An injunction was also prayed for to restrain the city and its street commissioners from tearing down and removing any portion of the fence or improvements on said premises.

The defendant answered by partial disclaimer, plea of not guilty, and by special plea claiming certain parts of the land in controversy as public streets and places dedicated to the city. The case was tried by the court without a jury, and judgment was rendered in favor of the plaintiff for the land claimed by him in his petition, and an injunction was granted restraining the city from tearing down his fence inclosing his premises, or disturbing him in the use of the same.

The uncontroverted evidence shows that appellee was the owner of all the lot described in his petition, except the right of way of the Galveston, Harrisburg & San Antonio Railway Company, the strip thirty feet wide not claimed by him, and the part described in the deed from J. V. Dignowity and appellee to E. Horan, which is set out in our conclusions of fact. The disclaimer of appellee, however, includes this parcel. There was some controversy as to the true location of the strip thirty feet in width, but the evidence is reasonably sufficient to show that its location is as designated by the exhibit attached to and made a part of appellee's petition.

The real controversy between the parties is in regard to the claim of appellant that certain portions of the lot were dedicated to the use of the city as streets and public places. Upon this controverted issue the evidence is that in 1891 or 1892 the appellee and one James V. Dignowity, being the owners and in possession of lot 9, range 2, district 1, in the city of San Antonio, employed John Rullman as a private surveyor to make a survey of said lot and subdivide the same into lots and blocks. The purpose of this survey is not disclosed by the evidence, but it may be presumed that it was a preliminary step towards placing the property upon the market. Mr. Rullman surveyed the land into blocks and lots, streets and alleys, which were marked off and indicated by stakes. He also made a map of the survey upon which the blocks and lots were numbered and streets named, and gave a copy of it to the appellee, who paid him for it upon the order of Mr. Dignowity. The map was never recorded in the city engineer's office, nor was it ever recorded elsewhere, or exhibited to the city authorities, or to the public, so far as the evidence discloses. The parts of the land designated upon the map as streets were never thrown open to the use of the public, nor is there any evidence tending to show that any portion of the land designated as streets upon the map was ever used by the public, or that the city ever exercised any control thereof, or used, occupied, or improved the portion so designated, in any manner. But on the 9th day of June, 1893, James V. Dignowity and D. Sullivan, by their deed of that date, conveyed to Elizabeth Horan a certain parcel of land which is

described in the deed as follows: "All that certain tract or parcel of land lying and being in the State of Texas, county of Bexar, and within the corporate limits of the city of San Antonio, about three miles northeast of Main Plaza, known and described as block 1, containing eleven lots out of original lot No. 9, range 2, district 1. Said block No. 1 is bounded on the north by Seguin Avenue, on the east by Locke Avenue, on the south by Dignowity Avenue, and on the west by an avenue fifty feet wide, and is sold in conformity with a plat of lot No. 9 made by John Rullman and W. M. Locke." This deed was duly acknowledged by both grantors, and was recorded in the office of the county clerk upon the day it bears date. On the 14th day of February, 1894, James V. Dignowity conveyed to D. Sullivan all his one-quarter interest in original lot No. 9, and the deed by which the conveyance was made contains this recital: "This conveyance is not intended to convey block No. 1 of eleven lots in said original lot No. 9, heretofore sold to E. Horan, as appears on the records of Bexar County, vol. 126, p. 48."

Some time prior to April 17, 1893, Paul Pretzer made a map of the city of San Antonio embracing all the lands within the city limits, and upon it delineated the subdivision of lot 9 as shown by the map made by Rullman. The evidence does not disclose by what authority the map of Rullman was copied into the one made by Pretzer, or that the owners ever consented to or had knowledge of its delineation on the Pretzer map. On April 17, 1893, the finance committee of the city made a report to the city council, and among other things reported the following: "Upon petition of Paul Pretzer asking adoption of his map as the official map, and offering to sell the city twenty-five copies for $500, and recommending that city take twenty-five maps, if they can be had for $20 apiece; also adopt as official map, provided same can be had in sixty days from date. Adopted." The map of the city of San Antonio, introduced in evidence by appellant has printed on it the following: "By authority of the city council of the city of San Antonio, 1893. Adopted April 17, 1893. John S. Ramsay, city clerk. Published by Paul Pretzer." It also has impressed upon it the seal of the city of San Antonio.

Upon the trial the appellee read in evidence, over objections of appellant which will hereinafter be stated, from a book containing the published ordinances of the city of San Antonio which purported to have been printed in the year 1893, the following ordinance:

"Sec. 9. In all subdivisions of property which have been made, or which may hereafter be made by the respective owners thereof, and in all cases where the lands of the city of San Antonio are hereafter subdivided or laid out into streets or alleys, or where new streets or grounds are donated, granted, or dedicated to the public for any purpose, a map or plat thereof shall be submitted to the city engineer of said city, who shall examine the same and submit it to the city council for their approval or rejection, together with his recommendation as to whether the same should be approved or not, and giving his reasons therefor. Should said

map or plat be approved by said council, the same shall be recorded in a book kept for that purpose by the city engineer, and said map or plat shall be filed in the city engineer's office as part of the record of his office, and copies thereof may be made by the city engineer; provided, that no map of inferior workmanship, or containing incorrect calculations, shall be accepted by the said engineer or recorded in said book.

"All property owners or their agents subdividing lands within the city limits shall set permanent stone monuments at each street intersection within their respective subdivisions, and at the beginning and ending of every curve, wherever said streets are laid out in curves, and all such subdivisions and monuments shall conform to the present monumented district of said city, and must be in all cases properly connected by the angles and measuremnts to the monumented districts aforesaid; and all maps or plats presented for record as herein provided shall be carefully compiled, fully explaining the plan of such subdivision in detail, and the location of such monuments shall be subject to the approval of the city engineer. All persons making subdivisions of property within the city limits shall present the maps or plats thereof to the city engineer of said city, for his action, within five days after making the same, the said maps and plats to remain on file in the engineer's office, he to furnish copy of same when called upon."

The answer of appellant admits that when this suit was instituted it was attempting to remove the fences from the land in controversy claimed by it as public streets. It does not appear from the evidence when the land was fenced, whether before or after it was surveyed, and the map made by Rullman.

*Opinion.*—No conclusions of fact found by the trial judge appear in the record. He may have found that the part of the land claimed by appellant as public streets was never dedicated by appellee and Dignowity, the owners, as public streets; or he may have concluded from the evidence that, if it was so dedicated, it was never accepted by the city for the purposes of said dedication. In our opinion the evidence is reasonably sufficient to sustain the trial court in either of such findings. The question of law to be determined, then, is, was appellee entitled to a judgment upon the finding of either of the facts stated by the trial court?

Dedication is the setting apart of land for the public use. Bushnell v. Scott, 94 Am. Dec., 555; Dovaston v. Payne, 2 Smith Lead. Cas., 90, and notes. It is essential to every valid dedication that it should conclude the owner, and that, as against the public, it should be accepted by the proper local authorities or by general public users. It is not necessary that the act of the owner should be evidenced in any formal mode, nor that the acceptance of the public should be evidenced by any formal act. There are two kinds of dedication,—statutory and common law.

The statutory dedication is one made in conformity with the provisions

of a statute. The general rule is, that in order to constitute a valid statutory dedication, the provisions of the statute must be substantially complied with, and such acts as it requires must be performed substantially in the manner prescribed.   Elliott, Roads and St., 85.

If the ordinance incorporated in our statement of the evidence, as to the city, is to be taken in the sense of a statute, it is apparent from the testimony that at the time appellant claims to have accepted the property as public streets there was no statutory dedication or acceptance of the same, and we are of the opinion that the ordinance was admissible in evidence for that purpose.   Though it is not shown that such ordinance was in effect when the land was conveyed and mapped by ·Rullman, yet it appears that it was read from a book published in 1893, which purported to be a compilation of all the ordinances of the city then in force.   As to whether such a compilation of its ordinances by authority of the city would not raise the presumption that the ordinance was in force at the time that an act falling within its scope was done, and throw the burden upon the city of proving that it was not in force at that time, is a question we need not here determine.   It does appear that it was in force when the city claims to have accepted the supposed dedication.

Common law dedications are of two classes,—express and implied. In both it is necessary that there should be an appropriation of the land by the owner to public use,—in the one case by some express manifestation of his purpose to devote the land to the public use; in the other, some act or course of conduct from which the law would imply such an intent.   The only facts in this case that would tend to show an express manifestation of the purpose of the owners to devote the land claimed by the city to a public use are the map made at their instance by Rullman, their deed to Elizabeth Horan, and the deed of Dignowity conveying his interest to appellee.

As is shown by the evidence, the map referred to was never exhibited to the public, or recorded anywhere.   Only one copy of it was made, and that was delivered to appellee, the original having been retained by the party who made it.   No authority from the owners was shown in Rullman either to publish or exhibit said map.   How Paul Pretzer obtained ·it so as to incorporate the plat of the Rullman survey into the map compiled by him, which was sold to the city and by it adopted as official, does not appear.   It is evident from the action. of the city in purchasing and adopting the Pretzer map that the acceptance as streets of the land delineated as such on the Rullman map was not contemplated.

The making and filing of a map designating certain streets thereon is only an offer to dedicate said streets to the public.   But the mere making of the map, or its delivery or exhibition to private individuals, does not alone constitute the offer of dedication to the public, and where the right to claim the street by the public rests upon a map alone, there is no offer of dedication to be accepted.   People v. Reed, 22 Pac. Rep., 474. In order to render the dedication of a street complete, there must be

an acceptance upon the part of the public. City of San Antonio v. Sullivan, 4 Texas Civ. App., 45.

The sale of lots in accordance with a map vests in the purchasers the right to use the streets appearing upon such map, and the right so vested can not be defeated by the act of the vendor, because by the sale, under such circumstances, he is estopped to deny or impeach rights thus acquired. Herm. on Estop., sec. 1145-1148.

"Where, therefore, lots have been offered for sale, and have been purchased in accordance with a map or plat upon which streets are made to appear, it is presumed that the purchaser was induced, and the price of the lots thereby enhanced, and the seller is estopped to deny the right which has been thus acquired. To permit him to sell the lots under such circumstances, and then to close the streets, would be to permit him to perpetuate a fraud upon his vendees. Such an estoppel, however, operates only in favor of him who has been misled to his injury, and he alone can set it up. This proposition would seem to flow as a logical sequence from the principle upon which estoppel rests." City of Norfolk v. Nottingham, 90 Va., 34; People v. Reed, supra. This principle is recognized by the Supreme Court in Gilder v. City of Brenham, 67 Texas, 345.

As illustrative of this principle, it is held by the Supreme Court of Maryland, that when a dedication is presumed from an implied covenant in a deed which arises from a call for a street as a boundary line, this dedication will be defeated if the covenant is rescinded before the street is opened or used by the public. Hall v. Mayor, 56 Md., 195; Story v. Ulman, 41 Atl. Rep., 120.

An implied dedication is one arising by operation of law from the acts of the owner. It may exist without any express grant, and need not be evidenced by any writing nor by any form of words, oral or written. It is not founded on a grant, nor does it necessarily presuppose one, but is founded on the doctrine of equitable estoppel. If the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate, and they are so received and acted upon by the public, the owner can not, after acceptance by the public, recall the appropriation. If the open and known acts of the owner are of such a character to induce the belief that he intended to dedicate the way to public use, and the public and individuals act upon such conduct, and proceed as if there had been in fact a dedication, and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law will not permit him to assert that there was not intent to dedicate, no matter what may have been his secret intent. Elliott, on Roads and Sts., 91, 92.

In this case there is no evidence of any act on the part of the owners from which a dedication of any part of the property to the public as streets can be implied. Nor does the evidence tend to show that the public or individuals acted upon any conduct of the owners as if there

had been a dedication, or acquired any rights which would be lost by appellee's claim to all the property in controversy.

We are of the opinion, from the law as above stated, that the appellee was entitled to a judgment upon the finding by the trial court of either of the questions of fact before stated. The inference necessarily arises from the judgment that he found one or both of such facts.

There is no merit either in the fourth or fifth assignment of error. The judgment does not affect Seguin Street, which bounds lot No. 9 on the north, and the land which it covers forms no part of the premises in controversy.

The conveyance from Woller and wife to Johnson, and the mesne conveyances from Johnson to appellee, vested title in the latter to all of the outlot No. 9, except the portion that is conveyed by Woller to the Galveston, Harrisburg & San Antonio Railway as a right of way. And this is excepted from the judgment by special reference to the deed. The only other exception contained in the Woller deed is a "small strip of land thirty feet wide off the south side of the right of way heretofore sold for a county road." The deed does not state to whom the conveyance was made; but the one of March 15, 1889, from Woller and wife to Gembler and Adams, removes this uncertainty. This deed conveys the right of way along the line of the Galveston, Harrisburg & San Antonio Railway Company, beginning at the south corner of Kampmann's fence, and running thence to the city limits, the strip being sixteen feet in width in the center and twenty feet in width at each end, and running east and west south of said railway. This strip lies entirely outside of the city limits, and is the county road referred to in the Gembler deed, and is excepted from the judgment by express references to the deed.

As is seen from our statement of the pleadings, the appellant's answer admits that it had entered or attempted to enter appellee's land in the effort to tear down his fence and enforce the rights claimed by the city in the alleged streets and highways described in the answer. It was therefore unnecessary for appellee to make further proof on that subject.

The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.