CITY OF KAUFMAN v. FRENCH.
(No. 7137.)

(Court of Civil Appeals of Texas. Dallas. Nov. 14, 1914. Rehearing Denied Dec. 19, 1914.)

1. DEDICATION (§ 1*)—ACTS CONSTITUTING—EXPRESS AND IMPLIED DEDICATION.

Common-law dedications are divided into express and implied dedications, and in both there must be an appropriation of land by the owner to public uses, in the one case by some express manifestation of such purpose, and in the other by some act or course of conduct from which the law will imply such an intent.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 8, 10–12; Dec. Dig. § 1.*]

2. DEDICATION (§ 15*)—REQUISITES—INTENT.

To constitute a dedication it is essential that the donor should intend to set apart and appropriate the land to a public use, which intent must not be a secret one, but expressed by the visible conduct and open acts of the owner inducing the belief that he intends to dedicate it to a public use, and where action is taken by the public or individuals, as if there had been in fact a dedication, the law will not permit the donor to deny the intent to dedicate.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. § 13; Dec. Dig. § 15.*

For other definitions, see Words and Phrases, First and Second Series, Dedication.]

3. DEDICATION (§ 19*) — ACTS CONSTITUTING—DESIGNATION ON MAPS AND PLATS.

A dedication may be established against the owner of land by showing that he has platted it as an addition to a city by a map placed on the public records, and has sold lots by deeds referring to the map in the description thereof, or that he has adopted a map or plat made by another person, the rule of construction in such case being to give effect to the intention manifested by such acts.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 35, 37–47; Dec. Dig. § 19.*]

4. DEDICATION (§ 15*)—EVIDENCE—PRESUMPTIONS.

The doctrine of a presumed dedication from unequivocal acts or declarations upon which the public or those interested in the dedication have acted, rests upon the principle that a man is presumed to intend the usual and natural consequence of his acts; but where a dedication was not manifested by acts and declarations which would lead an ordinarily prudent man to infer an intent to dedicate, or where the donor's acts and declarations forbade the inference of such intent and he was without negligence, he might show his mistake and avoid the dedication.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. § 13; Dec. Dig. § 15.*]

5. DEDICATION (§ 19*)—ACTS CONSTITUTING—REFERENCE TO MAPS AND PLATS.

Where a map and plat of land showing streets was made by one other than the owner and filed as a public record, the owner's subsequent deeds calling for and referring to the map for the description of the land, in the absence of evidence rebutting the presumption that he intended what his acts indicated, constituted a dedication of the land to public use, which, if acted upon by the city or by the grantees, made the owner's intent immaterial.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 35, 37–47; Dec. Dig. § 19.*]

6. DEDICATION (§ 15*)—REFERENCE TO PLAT—KNOWLEDGE OF GRANTEES—ESTOPPEL.

Where the owner of land, of which a third person had made a map or plat showing streets and filed it as a public record, did not intend by her conveyances referring to the map for description to dedicate the land to a public use, and the grantees were so informed or necessarily must have known when they purchased that she did not intend a dedication to public use, there was no dedication, since if the person against whom dedication is asserted was ignorant of his rights and free from negligence there would be no implied dedication; but even if ignorant of his rights the owner, if guilty of culpable negligence, would be estopped against those misled thereby.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. § 13; Dec. Dig. § 15.*]

7. JUDGMENT (§ 256*) — CONFORMITY TO VERDICT.

In an action to enjoin a city from claiming land for a street under a dedication by plaintiff's mother, a finding that she intended to dedicate the land in controversy to public use could not be ignored by the trial court, and judgment rendered for the plaintiff; but the court, if of opinion that the evidence showed that she did not intend to dedicate the land, should have granted a new trial.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 446–454; Dec. Dig. § 256.*]

8. LIMITATION OF ACTIONS (§ 6*)—RETROACTIVE OPERATION OF STATUTE.

In an action to enjoin a city's use of land for a street, where the asserted dedication, if any, was made by deeds of plaintiff's ancestor executed in 1883, referring to a map or plat showing streets, limitations in favor of the plaintiff could not run after the statute of 1887 (Acts 20th Leg. c. 41) exempting municipalities from limitations, and where less than five years elapsed between the alleged dedication and the

statute, the city's claim of right to open the street was not barred.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 16–31; Dec. Dig. § 6.*]

9. DEDICATION (§ 31*)—REQUISITES—ACCEPTANCE.

Proof of a city's acceptance of land dedicated by a map or plat and by reference thereto in deeds was not necessary.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 64, 65; Dec. Dig. § 31.*]

10. TRIAL (§ 398*)—FINDINGS—CONFLICT.

In an action to enjoin a city's claim to land for a public street under an alleged dedication by plaintiff's mother, a finding that her grantees did not know of her intention that the land should not be opened for street purposes was in conflict with a finding that plaintiff at the time of such deeds informed the grantees that he reserved the land as a part of his home place.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 946, 947; Dec. Dig. § 398.*]

11. DEDICATION (§ 44*)—SUFFICIENCY OF EVIDENCE—RESERVATION BY GRANTOR.

In an action to enjoin a city's claim to a street under an alleged dedication, evidence *held* insufficient to sustain a finding that plaintiff had informed all the purchasers, by deeds referring for description to a map and plat of the land filed as a public record, that the land in controversy was reserved.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 85–87; Dec. Dig. § 44.*]

Appeal from District Court, Kaufman County; F. L. Hawkins, Judge.

Action for injunction by W. A. French against City of Kaufman. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Charles Ashworth and Lee R. Stroud, both of Kaufman, for appellant. Huffmaster & Huffmaster, of Kaufman, for appellee.

TALBOT, J. This is an action brought by the appellee, W. A. French, to enjoin the appellant, city of Kaufman, from removing his fences and opening a street through the inclosure constituting his homestead in said city. The tract of land upon which his improvements are situated contains about 2⅛ acres, and is described by metes and bounds as follows: Beginning 120 feet south of the J. C. Cole league line on Jackson street, in the city of Kaufman, and on the east side of said street; thence north 450 feet; thence east 200 feet; thence south 450 feet; thence west 200 feet to the place of beginning. This land, being a part of a larger tract, was acquired by appellee's father and mother in 1858 or 1859, and since that time has been under fence and constituted a part of their homestead. After the death of appellee's father, appellee's mother continued to occupy the premises as her homestead. Appellee became the owner of the land, took actual possession of it in July, 1891, later built a residence house upon the 2⅛ acres of about the value of $5,000, and thereafter occupied the premises as the home of himself and family. On August 25, 1881, during the life-

time of Mrs. L. J. French, appellee's mother, and under whom he claims, L. H. Bryant caused to be recorded in the office of the county clerk of Kaufman county, in vol. 30, page 144, of Deed Records, a map or plat of 13 acres of land belonging to the said Mrs. French, including the land involved in this suit, as an addition to the city of Kaufman, to be known as the "French Addition." Upon this map certain blocks, lots, and streets were delineated, one of said streets being called Seago street. This map was recorded not only without the consent of Mrs. French, but over her emphatic protest. By deed dated April 13, 1883, Mrs. L. J. French conveyed to Julia Cree, for a recited consideration of $200, "block No. 26 in L. J. French addition to the town of Kaufman, being 200 feet square, and bounded on the north by Temple street and on the east by Madison street, on the south by Ann street and on the west by Washington street." The block 26 and the streets called for in this deed are in fact a part of the "French Addition" as platted and recorded by L. H. Bryant in 1881. By deed dated February 20, 1888, Mrs. L. J. French conveyed to J. A. Marshall a certain lot or parcel of land, described, among other descriptions given in said deed, as a "part of block No. nineteen (19), as shown and described on a map or plat of the town of Kaufman made by L. H. Bryant and duly recorded on the 25th day of August, A. D. 1881, in Book 30, page 144, of the records of deeds for said Kaufman county, to which reference is made." On February 16, 1889, Mrs. French conveyed to W. S. Broughton a tract of land described in the deed as follows:

"Situated within the corporate limits of the town of Kaufman, and being a part of the 13-acre tract owned by the said L. J. French, the land herein conveyed beginning at the N. W. corner of block No. 27; thence east 16 feet to the N. E. corner of the said 13-acre tract; thence south 100 feet to corner on E. B. line of said 13-acre tract; thence west 16 feet to W. B. line of said block No. 27; thence north 100 feet to the beginning; being 1,600 sqr. feet."

There are no streets called for in this deed and no reference made therein to any map, but the land described is doubtless a part of the tract covered by the Bryant map. Again, on the 30th day of April, 1891, Mrs. French deeded to her daughter and son-in-law, Anna L. and John C. Graves, a tract of land described thus:

"Lying and being in the town of Kaufman, * * * and being a part of the J. B. Cole 26 labor league survey, and a part of block No. 1 originally on the south side of the original plat of the town of Kaufman, with following boundaries, to wit: Beginning 50 feet south of the southeast corner of block No. 45, being 661 feet south of the north corner of block No. 17 on the public square of said town, corner post; thence south 200 feet corner; thence west 100 feet corner post; thence north 200 feet to corner post on south line of street; thence east 100 feet to the place of beginning; containing the

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

last half of block No. 17 of the addition to the town of Kaufman on the south, which is recorded in vol. 30, page 144, of Deeds for Kaufman county."

On July 7, 1891, Mrs. French deeded to her son, the appellee in this suit, "all that part of block 42 on the J. B. Cole 26 labor survey, and all of block No. 33 (thirty-three), situated in said town of Kaufman, in said addition, on the south of the original plat of said town of Kaufman, and being a part of said 13-acre lot on the J. B. Cole survey." On the 5th of August, 1913, after appellee had been in the peaceable and adverse possession of the 2⅛ acres of land mentioned, using it as his homestead, the appellant, acting by and through its duly elected council, passed an ordinance commanding appellee to open up Seago street as delineated on the Bryant map, between blocks Nos. 42 and 43 of the French addition, within 15 days from that date, and providing that, in the event appellee failed to open up said street, it should become the duty of appellant to open it. Appellee failed and refused to open up Seago street as ordered by the ordinance, and, at the time this suit was instituted, appellant was threatening to do so. Appellant concedes in this court, in view of the evidence and finding of the jury, that L. H. Bryant made and recorded the map creating the French addition to the city of Kaufman, without the consent of Mrs. L. J. French, but contends that, by the deeds above mentioned, she dedicated to public use all the streets delineated on said map, including the said Seago street, and that notwithstanding the appellant had not, for the great length of time shown, attempted to have Seago street opened for the use of the public, appellee could not complain of the enforcement of the ordinance requiring it to be done. The evidence is undisputed that the strip of land sought to be appropriated by appellant to street purposes constitutes a part of appellee's homestead, and that he had and held actual, peaceable, and adverse possession of it, under fence, for more than 10 years prior to the institution of this suit, the date of ordinance referred to, and the date of the threats made by appellant to disturb his possession; that appellant, at the time appellee built his residence house upon the 2⅛ acres of land, of which the strip in controversy is a part, and during all the time said land has been in the possession of appellee, knew that it was being used as a part of his homestead; that appellant never exercised any control or authority whatever over said strip of land, and never threatened or attempted to do so until the passage of the ordinance in 1913, and just before the bringing of this suit; that Bryant's map was made and recorded contrary to the express wishes of Mrs. L. J. French. The evidence further shows that the taxes were assessed against the 2⅛ acres of land, including that portion now claimed to have been dedicated to street pur-

poses, and collected by appellant from appellee's mother, and after appellee became the owner of the property from him from 1881 to the date of the trial of this suit; that appellant, about the year 1902, bought from one George Phillips a strip of land which was marked on the Bryant map as a street, and bought from Mrs. L. J. French about the same year strips of land also marked a street upon said map and designated thereon as Jackson street. Appellee contends that under these and other facts there was no dedication of the land in controversy to street purposes, or that if appellant ever had any right to run a street across his land, designated as Seago street, upon the grounds asserted by it, such right had long since been abandoned, or that it was now estopped from the exercise of that right. The case was submitted to the jury on special issues, and, among other things, they found that Mrs. L. J. French, at the times she executed the deeds, referring to the map made and recorded by Bryant, had no verbal understanding with the grantees in said deeds, and that there was no intention on the part of Mrs. French that the land in controversy should never be opened as a street. They further found that Mrs. French did not intend to ratify and adopt the Bryant map by the execution and delivery of said deeds, but that the reference to said map in said deeds was merely for the purpose of description of the property conveyed. Upon the findings of the jury, judgment was rendered for the appellee, and the appellant appealed.

It is assigned that "the court erred in rendering judgment for the plaintiff, and not defendant, because the findings of the jury on special issues and also the proof, both show a dedication of the property in controversy to the city for street purposes by numerous deeds referring to the map and to Mrs. L. J. French's addition thereon, wherein and whereby she conveyed the lots according to such map and plan." The proposition asserted is that "a map of an addition to a town, made and placed of record without the consent of the owner of the land platted, does not bind the owner, but if such owner afterwards executes deeds conveying lots or blocks calling for such map to purchasers from time to time, such deeds made in accordance with the plat or map will convey to the purchasers and the public, and to the city in trust, the right to have the map so recited in the deeds sustained, and such conveyances from time to time will constitute a dedication of the streets according to such map and the general plan," and that such a dedication is as binding as if the owner had authorized the map to be placed of record in the first instance and irrevocable by such owner.

There are two general kinds of dedication, namely, statutory and common-law. It is of the latter that we are here called upon to

treat and no further reference to statutory dedications need be made.

[1] Common-law dedications are subdivided into two classes, express and implied. In both it is necessary that there should be an appropriation of land by the owner to public use, in the one case by some express manifestation of his purpose to devote the land to the public use, in the other by some act or course of conduct from which the law will imply such an intent. Elliott, Roads and Streets (2d Ed.) § 121.

[2] Mr. Elliott further says:

"It is essential that the donor should intend to set the land apart for the benefit of the public, for it is held, without contrariety of opinion, that there can be no dedication unless there is present the intent to appropriate the land to the public use. If the intent to dedicate is absent, then there is no valid dedication. The intent which the law means, however, is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. * * * If the open and known acts are of such a character as to induce the belief that the owner intended to dedicate the way to public use, and the public and individuals act upon such conduct, proceed as if there had been in fact a dedication, and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law will not permit him to assert that there was no intent to dedicate, no matter what may have been his secret intent." Section 124.

[3] It has been held in this state, and very generally so we think, that dedication may be established against the owner of the land by showing that he has laid off and platted the ground into lots, blocks, and streets as an addition to a city by a map placed on the public records, and has sold lots by deeds referring to the map in the description thereof, or by showing that he has adopted a map or plat made by another person. But the cardinal rule of construction upon the subject of dedication by maps or plats is that which prevails respecting ordinary grants, and that is to discover and give effect to the intention of the party as manifested by his acts.

[4] So, where the dedication is manifested by unequivocal acts or declarations upon which the public or those interested in such dedication have acted, the fact that the owner may have entertained a different intention from that manifested by his acts or declarations, or acted under a mistake, is of no consequence. The doctrine rests upon the sound general principle that a man is presumed to intend the usual and natural consequence of his acts. So that, if a man "by his conduct has induced rightful action upon the part of others, he must be held to the consequences of that which his own acts made appear to the minds of men of fair prudence to have actual existence." If, however, the dedication claimed is not manifested by such acts or declarations—that is, if the acts of the owner were not such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate, or if his acts or declarations were of such a character as to forbid the inference of such intent and he was without negligence—then he would not be precluded from showing his mistake and avoiding the dedication.

In the case before us it is conceded by appellant that the map made and placed of record by Bryant was without the consent of Mrs. L. J. French, and that the question of dedication turns upon the effect to be given the deeds subsequently made by her referring to and calling for said map in the description of the several parcels of land conveyed by said deeds. In city of Corsicana v. Johanna Zorn, 97 Tex. 317, 78 S. W. 924, it was held that, where the husband of Mrs. Zorn caused a subdivision and survey of a tract of land situated in said city belonging to Mrs. Zorn to be made and placed on the county records of deeds with her consent, conveyances subsequently made and duly acknowledged by Mrs. Zorn and her husband of certain lots in such subdivision, calling for the map and for streets and alleys as shown on said map, operated as a dedication to the public of such streets and alleys, and empowered the city authorities to open them to the public, over the protest of the grantors, as the growth of the city required. This decision was made on certified questions, the first of which was:

"Can a married woman make a valid dedication of her separate realty to public use? If so, is it necessary for her to execute a deed for that purpose and privily acknowledge the same as required by statute for other conveyances by her?"

The second of these questions was:

"If, in answering the above, you hold that she can make such dedication without the statutory acknowledgment, do the facts as above stated show a dedication to public use of the streets and alleys designated on said map?"

In answering these questions the Supreme Court, after calling attention to the law of this state which prescribes that when a married woman conveys land, her separate property, she must acknowledge the deed as prescribed to give it effect as a conveyance, said:

"When the deed has been executed and acknowledged as the law requires, there is no difference in its effect as a conveyance from that of a feme sole or of a man"; that, "if Mrs. Zorn had been a feme sole, the effect of her deeds would be to convey to each one of the purchasers of lots a right to have all the streets and alleys represented upon the map or plat kept open for public use," and that "her deeds duly executed must be given their full effect."

There was nothing in the record in the case the Supreme Court here had under consideration tending to show an intention on the part of Mrs. Zorn and her husband different from that manifested and to be inferred from the execution of the deeds, and hence the effect of said deeds "was to convey to such purchasers the right that they and all persons should be permitted to use the streets and alleys for the purposes designated upon the said plat for all time." In other words, the deeds executed by Mr. and Mrs. Zorn were

acts clearly and unequivocally evidencing an intention to set apart the streets and alleys delineated on the map for public use, and, in the absence of proof of a contrary intention and knowledge on the part of the purchasers at the time of their purchase, they conclusively established the dedication. In the case under consideration the jury found that Mrs. French in the year 1883 and in other years thereafter executed certain of the deeds introduced in evidence by appellant, which called for or referred to the Bryant map or the addition called the "French Addition"; that she did not, at the time she executed either of said deeds, have any verbal agreement or understanding with the purchaser named in the deed that the strip of land in controversy should never be opened up and made a part of Seago street; that there was no intention at the time of such sales on the part of Mrs. French that said strip of land should never be opened as a street, and that no intention on the part of Mrs. French to the effect that said strip should not be opened as a street was expressed to or made known to the purchasers. The jury further found, however, that the Bryant map was made and placed of record without the consent and over the protest of Mrs. French, and that at the time she executed the deeds referred to she did not intend by their execution to ratify and adopt said map, but that the reference to said map or plat in said deeds was intended by her merely for the purpose of description of the property conveyed; that at the time said deeds were made Mrs. L. J. French was in the actual possession of said strip of land, the same being inclosed by a fence, claiming it as her own, and that W. A. French (appellee) "at the time of the sales to various purchasers of the French land informed them that he reserved the land now included in his inclosure as a home place."

[5] It seems clear that under the decision made in City of Corsicana v. Zorn, supra, and other decisions, the execution and delivery by Mrs. French of the deeds calling for and referring to the Bryant map, in the description of the land in said deeds conveyed, in the absence of evidence rebutting the presumption that Mrs. French intended what her acts in making said deeds indicated, constituted a dedication of the land in controversy to public use, and, if the appellant or interested purchasers have acted upon those acts, it is immaterial that Mrs. French may have entertained a different intention from that manifested by such acts.

[6] If, on the other hand, Mrs. French did not, at the time of the execution and delivery of said deeds, intend to dedicate said land to public use, and the grantees in said deeds were informed, or from the acts or declarations of Mrs. French must necessarily have known at the time they purchased, that she did not intend to dedicate the particular strip of land in controversy to the use of the public by the execution of said deeds, then there was in fact no dedication of said land to such use, and appellant has no right to take possession of said land and open it up as a public street of the city of Kaufman. This is true for the reason that the law is that if the person against whom the dedication is asserted was ignorant of his rights, and was free from culpable negligence and evil motive, there would be no implied dedication, especially so if the person claiming it had full knowledge of all the facts. But, even if ignorant of his rights, the owner would be estopped, if guilty of culpable negligence, as against those misled thereby. Elliott, Roads and Streets, § 129.

[7] Whether Mrs. French intended to dedicate the land in controversy in this suit to public use, and whether, if she did not so intend, the grantees in the deeds by which appellant claims a dedication was made knew that fact, were vital questions for the determination of the jury in the court below, and the first question seems to have been decided in appellant's favor. A contrary finding upon this issue was so essential to appellee's right to the relief sought by him that it could not be ignored by the trial court and judgment rendered upon the special verdict of the jury upon the findings favorable to him. It is well established in this state that in trials by the jury the verdict must form the basis of the judgment, and the trial court cannot, in rendering judgment, disregard a finding on a material issue, even though such finding has no support whatever in the testimony. So, when a special verdict has been returned, the court must either set aside the verdict and grant a new trial or render judgment upon and in conformity with the verdict. If, therefore, the trial court was of opinion that the evidence in this case clearly showed that Mrs. French did not intend to dedicate the land in controversy to public use, and that the grantees in the deeds executed by her referring to the Bryant map had notice or knowledge of that fact at the time they purchased, the proper course to pursue was to set aside the verdict of the jury and order a new trial of the case. Scott v. Farmers' & Merchants' Nat. Bank, 66 S. W. 485; Clark & Loftus v. Pearce, 80 Tex. 146, 15 S. W. 787. This is true even though there may be some conflict in the jury's finding that Mrs. French did not intend that Seago street should not be opened through the land in controversy, and their finding that by the deeds executed by her she did not intend to adopt and ratify the Bryant map, but referred to it in said deeds for description of the land in said deeds conveyed.

[8] Judgment, it seems, was not authorized in favor of appellee either upon the ground of limitation, estoppel, or nonacceptance of the alleged dedication. The dedication, if

any, was made by the execution of the deeds referring to the Bryant map, and the earliest of these deeds was the one made to Mrs. Cree in 1883. By the statute of 1887 (Acts 20th Leg. c. 41), municipal corporations were exempted from the operation of the statute of limitations, and hence limitation in favor of appellee could not run after the passage of that law, and, less than five years having elapsed from the date. of the supposed dedication and the taking effect of said statute, appellant's claim of right to open the street in question was not barred. Nor were the facts sufficient to constitute an estoppel.

[9] In regard to appellee's contention that the evidence failed to show an acceptance on the part of appellant of the claimed dedication, it may be said that, even though no act of the appellant indicating an acceptance was shown, proof of acceptance, under the decision rendered by the Supreme Court in City of Corsicana v. Zorn, supra, was not necessary. We will take occasion to say, however, that there is an apparent conflict in this case and the cases of Gilder v. City of Brenham, 67 Tex. 345, 3 S. W. 309, City of Galveston v. Williams, 69 Tex. 449, 6 S. W. 860, and City of San Antonio v. Sullivan, 23 Tex. Civ. App. 619, 57 S. W. 42, on the subject. In all three of the last-mentioned cases it seems to have been held that, in order to make a dedication complete on the part of the public as well as the owner, there must be an acceptance. Mr. Elliott, in his works on Roads and Streets, also lays this down as the rule. In City of San Antonio v. Sullivan, supra, in which a writ of error was denied, the court said:

"It is essential to every valid dedication that it should conclude the owner, and that, as against the public, it should be accepted by the proper local authorities or by general public users."

The holding in Zorn's Case, however, is, so far as we are aware, the last expression of our Supreme Court on the subject, and should be followed now as the law of this state.

[10, 11] There is also an apparent conflict in the findings of the jury on the question of whether or not the grantees in the deeds made by Mrs. French, and relied on as showing a dedication of the land in controversy, were informed by appellee, at the time said deeds were executed, that the land in controversy was reserved as a part of the home place. As pointed out above, they found, in effect, in answer to one of the questions propounded to them, that said grantees were not informed of an intention on the part of Mrs. French that the strip of land in question should not be opened up for street purposes, and, in answer to another question propounded to them, they answered that W. A. French, at the time of the sales to various purchasers of the French land, informed them that he reserved the said land as a part of his home place.

This last-mentioned finding is doubtless broad enough to indicate that all the purchasers of land from Mrs. French were informed, at the time of their respective purchases by appellee, that the land in controversy was to be reserved as a part of his home place; but an examination of the statement of facts leads us to the conclusion that the evidence was insufficient to support such a finding, or at least to create a doubt as to its sufficiency to do so; and, further, that probably all the available testimony upon the question was not developed on the trial of the case. It appears that appellee, after the death of his mother, Mrs. L. J. French, deeded land situated in what is called the French addition to W. Franklin and J. J. Patterson, and that he testified:

"When I talked to Franklin and them I told them I was reserving that piece of land over there for my home. The part on that side has always been reserved."

This is all the evidence we have discovered bearing upon the question, and is, it occurs to us, insufficient to support the finding of the jury under consideration. Appellee further testified, however, that he attended to all of his mother's property from 1873 or 1874 down to the date of her death, which occurred in 1894, and that, in making sales of any property, he never did represent to any purchaser that the strip of land in controversy would be opened up for street purposes. It may be that, had the question been asked, he would have said that he represented his mother in making the sales to Mrs. Cree and others, and that he stated, in substance, to her and the other purchasers that the particular strip of land involved in this suit was reserved as a part of his mother's home, and that Seago street would not be extended through or over it. We are not, therefore, prepared to say that the facts of the case in the respect just mentioned, and perhaps in other respects, have been so fully developed as to authorize us to reverse the judgment of the court below and render judgment here in favor of appellant. The judgment of that court is, therefore, for the reasons indicated, reversed and the cause remanded.

Reversed and remanded.