## CITY OF BROWNWOOD v. SULLIVAN et al.
### No. 7429.

Court of Civil Appeals of Texas. Austin.
April 9, 1930.

Rehearing Denied April 30, 1930.

Wilkinson & Wilkinson, of Brownwood, for appellant.

Woodruff & Holloway and Will J. Scott, all of Brownwood, for appellees.

McCLENDON, C. J.

The city of Brownwood sued W. J. Sullivan and wife, and Howard Sullivan, in trespass to try title to recover a strip of land 21½ feet wide, extending along the northeastern border of a 5-acre tract in the city. The appeal is from a judgment in favor of defendants upon a directed verdict.

The real purpose of the suit was to establish the southwestern line of what is now Ninth street, the city claiming that the property line is 21½ feet inside the present curb line. Defendants claim the property line is only 8 feet within the present curb line.

In order to a clear understanding of the situation we refer to the annexed plats, No. 1 of which is the recorded plat of Highland View addition, and No. 2 a sketch made by Ragsdale, Brownwood city surveyor. Coffee and Groves owned a 30.9-acre tract, which includes the property in question and Highland View addition. On February 2, 1907, they conveyed to R. C. Gotcher a tract containing about 5 acres, in the western corner of the 30.9-acre tract. On August 19, 1907, they acknowledged and placed of record the annexed plat of Highland View addition. The streets and alleys shown therein were dedicated for public use. The following changes in names of streets in the plat should be noted: Fourth avenue is now Ninth street; Taber avenue is now Avenue I; Earl avenue is Avenue J; and Live Oak avenue is Avenue K. In the deed to Gotcher the 5-acre tract is described to begin at the west corner of the 30.9-acre tract; thence S. 31½ E. 640 feet; thence N. 54½ E. 338 feet to corner, same being E. corner of this tract and N. corner of a 2-acre tract out of said 30.9-acre tract now owned by Rucker, and S. W. line of a 40-foot street, between this tract and Highland View addition; thence N. 31½ W. "with S. W. line of said 40-ft. street." 640 feet; thence S. 54½ W. 338 feet to the beginning.

It will be observed that in the Highland View addition plat there is no way by which the several blocks can be located, with reference to the surrounding property, except by the adjacent streets. From this it would appear that the several streets parallel with Ninth street are projections of streets to the west of the addition. This also appears to be true with reference to Ninth street. How-

ever, as will be noted from plat No. 2 attached, if the calls for distance in the Gotcher deed control, there would be a jog in the southwestern line of Ninth street. This results from the fact that the call distance of 338 varas is short some 12½ feet of reaching the S. W. line of Ninth street projected from the N. W. This shortage, however, is reduced at the eastern corner of the Gotcher tract to 5.2 feet. It should also be noted that Ninth street west of the Highland View addition is 50 feet wide, whereas it is given in the plat as only 40 feet wide. It appears to have been the manifest intention of those who platted the addition to make the streets therein conform to those traversing adjacent property, as is now required by the Brownwood charter. When Gotcher purchased, the entire 30.9-acre tract was open country, except for a fence to the southwest of his property. Shortly after he purchased he fenced his tract, and in doing so he attempted to line up his northeast fence line with the southwest line of Ninth street as it existed west of the 30.9-acre tract. He also built a house in the north corner of the tract, where he resided until he disposed of the property. Shortly after he had fenced his property he discovered that, according to his field notes, there was a jog in the street, and his fence projected some 10 or 12 feet into the street. He thereupon purchased block 4 in High-

Map of Highland View addition to Brownwood, Texas

land View addition, just across the street from his property on Ninth street. He fenced block 4, setting the fence line back some 19 feet from the property line in order to line it up with the northeast side of Ninth street, and left a 50-foot street between the 5 acres and block 4. The date of this purchase is not given. However, he testified

that this was only a short time after his purchase of the 5-acre tract. On April 24, 1911, he conveyed to Richardson all of block 4 in Highland View addition, except a strip 19 feet wide along the northeast line of Ninth street, which strip the deed recites, "is hereby reserved for street purposes and is hereby added to 4th Avenue (9th Street) and is dedicated to public use forever."

November 16, 1912, W. J. Sullivan and wife acquired the 5-acre tract from S. N. Gotcher, immediate grantee of R. C. Gotcher. This tract has been continuously occupied and used by the Gotchers and Sullivans from the time R. C. Gotcher built his residence and fenced it, about 1907. When Highland View addition was platted it was not within the city limits of Brownwood. The exact date it became included in the city limits is not shown, but it appears to have been between 1922 and 1925. There was no evidence of any acceptance of the street dedication in Highland View addition, either expressly or by implication, on the part of any grantee or the public, until in 1922 the county commissioners graded Ninth street from Avenue I to Avenue J. This appears to have been done at the instance and expense of Sullivan and other property owners. In doing this grading the property lines along Ninth street between the 5-acre tract and block 4 of Highland View addition were recognized in accordance with the fence lines on either side as they then existed. This made of Ninth street virtually a straight street from Coggin avenue (west of Avenue I) to Avenue J. In 1925 the city laid a water main along Ninth street, which was paid for either in whole or in part by Sullivan. In 1926 the city graded and graveled Ninth street from Avenue I to Avenue J, at the instance and expense of the property owners affected, including Sullivan. In 1925 an effort was made by interested parties to acquire all of block 8 in order to widen Ninth Street so as to make it a 50-foot street. Pursuant to this purpose Sullivan purchased lots 1, 2, and 3, in block 8; but otherwise it appears the plan was not carried out. On July 6, 1925, Sullivan conveyed lots 1, 2, and 3 in block 8 to Lambert, reserving a strip 15 feet wide off of the southwest line of these lots for street purposes. This deed was not placed of record until July 6, 1926, and Sullivan testified that he understood that it had been lost. Some time during 1926 a controversy arose between Sullivan and Longley regarding the southwest line of Ninth street opposite lots 1, 2, and 3 in block 8, and the matter was taken before the city council. Longley seems to have built his residence in such a way that by projecting the northeast line of Ninth street through to K avenue it would cut off a portion of his front steps, and Longley was insisting that a jog should be made in Ninth street at Avenue J; whereas, Sullivan contended the jog should be made at the east

line of lot 3 in block 8, unless the northeast line of Ninth street should be straightened through to Avenue K. It was the desire of the city authorities that the latter should be accomplished, and they went so far as to offer Longley $450, which was one-half of the cost of moving his house farther back from the street line. Longley declined this offer, and the negotiations fell through. However, an agreement was made between the city council and Sullivan to the effect that the city would deed Sullivan the strip adjacent to the 5-acre tract, so as to straighten the southwest line of Ninth street, and Sullivan was to deed the city the 15-foot strip across the southwestern extremity of lots 1, 2, and 3, in block 8. Sullivan executed a deed to the city, prepared by the city attorney. The city never executed a deed to Sullivan, due to the fact that the city attorney was not satisfied that the city owned the fee to this strip, and he was unwilling for the city to make a deed to land he was not sure the city owned. The exact sequence of events in these negotiations and the controversy between Sullivan and Longley are not clearly shown; but they all took place in 1926. The city council's minutes show the following, with reference to the Longley-Sullivan controversy:

"Oct. 5th, 1926. Mr. Longley and Mr. Sullivan addressed the Council next in regard to straightening 9th St., which was discussed, Ninth St. being graded straight at present, no action was taken by the Council to make a change. First Reading Nov. 16, 2nd Reading Nov. 23. Final Reading Nov. 20, 1926. Ordinance Signed Nov. 30, 1926."

About this time, date not given, there appears to have been a great deal of building activity in this section of the city, and Sullivan had his five acres platted as "Sullivan's Addition." In this plat he showed the northeast line of the addition as a projection of the southwest line of Ninth street. He divided the tract into 24 lots, 12 of which fronted on Ninth Street; 11 of these had a 50-foot frontage, and No. 12, which was in the north corner of the tract and included the Gotcher residence site upon which Sullivan lived had a 90-foot frontage. Lots 4 and 16 in this addition lined up with Avenue J. Sullivan sold all of the lots in the addition fronting on Ninth street, except lots 4 and 12, which latter he retained. Lot 11 he sold to his son Howard, one of the defendants in this case. In January, 1927, Howard Sullivan obtained a permit to erect a residence on lot 11, to cost $6,000. About this time the Sullivans applied to the city authorities for a grade line in order to build a concrete curb and sidewalk. Under the city ordinance a 6-foot curb line was required for a 40-foot street, and an 8-foot curb line for a 50-foot street. Ragsdale, the city surveyor, under the direction of the mayor-manager of the

city, gave this curb line as 8 feet from the property line, as shown by the Sullivan subdivision. A little later the Sullivans began constructing a curb and sidewalk in accordance with this grade line, but before the work was completed they were notified in writing by Ragsdale not to construct a curb and sidewalk in accordance with his previous grade line. There is a conflict in the testimony whether the Sullivans had any previous notice in this regard. Sullivan testified that they had not, and that the work had been partially completed and all the machinery and material were on the ground at the time the notice was received; whereas Ragsdale testified that the day after he gave the grade line he made a survey and ascertained that the calls in Gotcher's deed did not extend to the southwest line of Ninth street, as fixed by the Sullivan addition plat, and he notified the Sullivans that the street line as represented by their title deeds would have to be observed. In September, 1927, Sullivan obtained from the city a building permit to erect a residence on lot 12, Sullivan's addition, to cost $4,000, and in accordance with this permit he tore his old house down and built a new one. The two Sullivan houses would be very near the property line if the contention of the city is sustained, so near, in fact, that the front steps or front galleries would be almost at the property line. Other than as shown by the deeds to the 5-acre tract, the conveyance by Gotcher of block 4, Highland View addition, and the conveyance by Sullivan to Lambert of lots 1, 2, and 3, block 8, Highland View addition, there are no deeds shown to any portion of Highland View addition, and the only evidence of holdings therein subsequent to the platting of the addition is that which may be inferentially gleaned from the plats in evidence and oral testimony. From plat No. 2 it appears that Longley owned a tract adjoining the five acres, and two or three lots in the south corner of block 8, Highland View addition, upon which latter we assume his residence was erected. Between these Longley lots and the Lambert property appear one or two lots held by Giddings. There is nothing in the record to show when Longley or Giddings acquired their property, or from whom, or under what terms. The evidence will not support an affirmative finding that any of these parties owned any of this property prior to 1925.

From the above facts, which are undisputed, except where noted, it seems clear to us that the judgment of the trial court should be affirmed under the following well-established principles of law:

■ When Gotcher acquired the five acres his northeast line extended to Fourth avenue, or Ninth street, wherever the true location of that street was, and he acquired the fee subject to an easement for street purposes to the center of that street. Mitchell v. Bass, 26 Tex. 372; Summit Place Co. v. Terrell (Tex. Civ. App.) 203 S. W. 1110, affirmed (Com. App.) 232 S. W. 282.

■■ Assuming, for the purpose of this case that the location of this 40-foot street is fixed by the call for distance in Gotcher's deed —a question which we find it unnecessary to decide—the dedication of the streets in Highland View addition did not become irrevocable until there was some acceptance thereof, either by the county or municipal authorities, or by sale of property in the addition, under deeds recognizing either expressly or by implication the street dedications; and the burden rested upon the city to show such acceptance. San Antonio v. Sullivan, 23 Tex. Civ. App. 619, 57 S. W. 42 (error refused); Houston v. Finnigan (Tex. Civ. App.) 85 S. W. 470, 474 (error refused).

■■ When Gotcher fenced the 5-acre tract and lined up his northeast fence so as approximately to conform to the property line of Ninth street to the west, and thereafter in order to make a like conformity on the other side of the street he purchased block 4 in Highland View addition and fenced it in accordance with this purpose, he thereby withdrew or revoked the previous dedication of Fourth avenue or Ninth street, which in any way conflicted with this fencing. The first evidence of any acceptance of the dedication of Ninth street was by the county commissioners in 1922, when they graded the street from Avenue I to Avenue J, in accordance with this fencing. The subsequent recognition by the city authorities was in line with what had previously been done by the county authorities. The negotiations between Sullivan and the city, independent of any considerations of estoppel, unequivocally show a recognition by the city authorities of the southeast line of Ninth street as contended for by Sullivan. It is not necessary for us to consider the effect of the agreement to exchange deeds between Sullivan and the city. The city did not own the fee to the strip in controversy. This ownership was in Sullivan. The only right the city could have had was an easement for street purposes, which, in fact, as we have shown, the city never acquired. These negotiations, however, did clearly evidence a recognition of the property line at the place in dispute.

The point on which we decide the case is definitely settled in the above cases of San Antonio v. Sullivan and Houston v. Finnigan, in each of which a writ of error was refused. The latter is virtually on all fours as to its controlling facts with the case at bar. There, there had been a dedication by plat of an 80-foot street. The purchaser

of an adjoining tract fenced off 25 feet of the platted street, and held it under fence continuously. This fencing occurred long prior to any acceptance of the dedication. The gist of the holding is embodied in the following quotation:

"The burden was upon the city to show dedication and acceptance. This has been done in a general way, so as to hold all parts of the street yet remaining open or which were open at the time of the acceptance. But as to the 25-foot strip the city must go further. It must show that the acceptance was made at a time when the 25-foot strip was included in the offer of dedication. This it has not done. Indeed, it has offered no proof upon the point, and evidence adduced by plaintiff strongly tends to the opposite conclusion. Prior to acceptance, dedication may be revoked by devoting the property to private use. French v. Scheuber [6 Tex. Civ. App. 617] 26 S. W. 133."

The city strongly relies upon Corsicana v. Zorn, 97 Tex. 317, 78 S. W. 924, and Martinez v. Dallas, 102 Tex. 54, 109 S. W. 287, 113 S. W. 1167, which hold in effect that, where an addition has been platted, the street dedications become irrevocable whenever property is sold in the addition with reference to the plat, and this, regardless of any acceptance on the part of the municipality. As above shown, the facts here are not brought within the rule announced in these cases; they fall within the rule announced in the cases above.

The trial court's judgment is affirmed.

On Appellant's Motion for Rehearing.

Appellant questions the accuracy of the following fact finding:

"Other than as shown by the deeds to the 5-acre tract, the conveyance by Gotcher of Block 4, Highland View Addition, and the conveyance by Sullivan to Lambert of Lots 1, 2 and 3, Block 8, Highland View Addition, there are no deeds shown to any portion of Highland View Addition."

The record does show that block 4 of Highland View addition was conveyed by Coffee and Groves to Courtney Gray on March 4, 1907; however, as shown in our original opinion, this entire block was shortly thereafter purchased by Gotcher for the purpose of widening Ninth street, and, when sold by him to Richardson, a 19-foot strip along the northeast side of Ninth street was reserved for street purposes. This conveyance to Gray, however, in no way affects our original holding, since Gray's title passed to Gotcher, who purchased for the sole purpose of broadening and straightening Ninth street, and, when conveyed by him, this purpose was carried out by reservation in his deed.

With this explanation, the motion for rehearing is overruled.