**PRIOLO et ux. v. CITY OF DALLAS.**

No. 14617.

Court of Civil Appeals of Texas. Dallas.

April 17, 1953.

Rehearing Denied May 15, 1953.

Wm. Andress, Jr., Dallas, for appellants.
F. H. P. Kucera, City Atty., H. Louis Nichols and W. R. Allen, Dallas, for appellee.

YOUNG, Justice.

Appellants' suit as instituted was in trespass to try title, the subject matter a tract of land 27' x 120' in size; the City answering by general denial, plea of not guilty, together with a special plea of statutory dedication of the strip for street purposes. The judgment, following a trial to the court, established easement rights in favor of the City and plaintiffs have appealed from this adverse "take nothing" rendition.

Charles and Nancy Priolo, agreed common source, had previously bought property fronting on Dolphin Road in the City of Dallas. Part of it fronted on said street about 63 feet at corner of Haskell and on this they had built a grocery and liquor store. Then, separated by a 40–ft. easement, plaintiffs' property extended about 120 feet along Dolphin Road on which they later built two rent houses pursuant to permits dated December 27, 1948, applied for and received through their contractor, one J. S. Cardella, now deceased. Prior thereto, through agency of Cardella and on November 10, 1948, Priolo had filed in the office of Dallas County Clerk a plat covering the property in question, signed and sworn to by him, reciting: "That I, Charles Priolo, do hereby adopt this plat designating

the hereinabove described property as a subdivision of a tract of land out of Block 2630 of the John Beeman Survey, Abstract No. 754, City of Dallas, Dallas County, Texas, and I do hereby dedicate to the public use forever streets and alleys shown thereon"; the instrument theretofore having been approved by the City Plan Commission and bearing the legend: "Subdivision of tract of land out of Jno. Beeman Sur. Abstract No. 754, blk. 2630, City of Dallas, Dallas County, Texas, Oct. 19, 1948." Said plat (defendant's exhibit No. 4, and basis of its defense of dedication) is shown below:

Plaintiff, on the other hand, denied having any knowledge of aforesaid plat recitals in so far as same constituted a dedication of his property; not learning of its effect as such until shortly before the City proceedings in September 1949 to condemn the strip in front of his business at Dolphin Road and Haskell; then employing counsel who notified the City Plan Commission on or about October 1, 1949 that there had been "no dedication of that property." See Tex.Civ.App., 234 S.W.2d 1014, Tex.Sup., 242 S.W.2d 176, for facts concerning the condemnation suit just mentioned, that may be here relevant.

Points of appeal are, in effect and wording, viz.: (1) There was no evidence (or insufficient evidence) "to show any intention on the part of Charles and Nancy Priolo to part with title to the strip of land in controversy by giving it to the City, and without such an intention there is no valid dedication"; (2) "If the signing of the subdivision plat by Charles Priolo alone was sufficient to evidence an intention to dedicate, until it was accepted by the City it remained only an offer to dedicate, subject to withdrawal before acceptance, and it was withdrawn about October 1, 1949"; (3) error in admission in evidence of defendant's exhibits 10, 11, 12, and 13 which reflected actions by the City bearing on acceptance of dedication, "occurring after the withdrawal of the offer of dedication, if any"; (4) no evidence (or insufficient evidence) "of any acceptance by the City of the purported offer of dedication prior to its withdrawal about October 1, 1949, and without acceptance there can be no completed dedication."

The City appropriately answers the foregoing points; arguing further the absence or insufficiency of evidence of any withdrawal or revocation of dedication prior to the filing of suit in February 1950; the verbal notice to the City Plan Commission about Oct. 1, 1949 being "ineffective for that purpose."

The Court's findings of fact and conclusions of law, made at request of appellants, are set forth below.[1]

1. "That Charles Priolo, plaintiff, by an instrument in writing, dedicated to the public for street purposes the land involved in this controversy, such property being described as follows: (Field notes omitted).

"2. That said instrument of dedication was part of a plat which was filed with the City Plan Commission of the City of Dallas on October 28, 1948, and that said plat and dedication was filed by the plaintiff with the County Clerk of Dallas County, Texas, on November 10, 1948.

"3. That the said dedication of the property in controversy to the public for street purposes was accepted by the City of Dallas, and said City entered upon said property for the purpose of applying it to the use for which it was dedicated.

"4. That the plaintiffs acting by and through their agent, J. S. Cardella, applied for and obtained building permits and constructed houses on Lots A and B of Block 2630, official City numbers of the City of Dallas, after the said plat had been approved and filed for record by the plaintiffs, and building permits for said houses were issued by the City of Dallas in accordance with the plat theretofore filed in the Deed Records of Dallas County, Texas, by the plaintiffs.

"5. That the dedication of the property in question to the public for street purposes had never been revoked by the plaintiffs prior to its acceptance by the defendant, City of Dallas.

"Conclusions of Law. 1. That under the evidence, the plaintiffs failed to sustain the burden of proof so as to show that they had superior title to the property in question or that they were entitled to possession of the same.

"2. That the plaintiffs are estopped to question the validity of the instrument of dedication of the property in controversy to the public for street purposes.

"3. From the facts, I conclude that the plaintiffs are not entitled to recover the land in controversy and that the defendant, City of Dallas, has a valid subsisting easement for street purposes in the property in controversy."

Also, additional findings: "In reply to the plaintiffs' request for the Court to make and file additional findings of fact and conclusions of law, the Court hereby finds as follows:

"1. I hereby find that the City of Dallas evidenced its intention to accept the dedication of the property in question by the preparation of plans for the improvement of Dolphin Road, so as to include the property dedicated by the plaintiffs, as evidenced by defendant's Exhibit No. 14, which shows that said plat or plan

Following is a brief résumé of the testimony in support of the respective contentions: Desiring to build on the 120-foot frontage of Dolphin Road in 1948, Priolo arranged for same through Cardella, the contractor; stating that he approved the subdivision of lots and sought the necessary permits without knowledge of the contemporaneous dedication; testifying however in such connection: "Q. (By Mr. Nichols) Mr. Cardella handled the making of the plat and handled the getting of building permits for you, didn't he, to build the houses? A. He got everything. Q. And in doing that, he was acting for you? A. That is right"; further, that it was when the City had proceeded to condemn only the land in front of his business lot that he employed counsel, then learning of the claim of dedication; and that he would certainly not have contested the condemnation proceedings while at the same time donating the right-of-way on land practically adjoining. Thereafter on December 27, 1948 Priolo, through Cardella, applied for and received from the office of City Building Inspector, permits to build two houses on the "subdivision"; the application in blanks filled in by the permit clerk describing the lots as "A" and "B" of Block 2630, showing their dimensions (60 x 102.33 x 103.85; 60 x 103.85 x 105.36) exactly as indicated on the contested plat of dedication.

In April 1949 a draftsman in the Office of Public Works drew and filed plans for the widening and paving of Dolphin Road inclusive of the land in dispute and Priolo's business property (the latter becoming involved in aforesaid condemnation suit). On October 11, 1949 the Dallas City Council adopted a resolution approving costs and assessments for the widening of Dolphin Road; making reference to the April 1948 drawings thereof on file, setting same down for public hearings; and on November 1, 1949, the hearings being completed, the Council by ordinance levied charges for the named improvements; fixing liens against abutting properties, again referring to said plans theretofore prepared and filed. On February 14, 1951 appellants

was prepared in April 1949, and as further evidenced by Ordinance No. 4612 (Defendant's Exhibit No. 10), which ordinance provided for the widening of Dolphin Road, so as to include the property theretofore dedicated by the plaintiffs; and further evidenced by a resolution passed by the City Council of the City of Dallas on October 11, 1949 (Defendant's Exhibit No. 11), which said resolution provided for the widening and paving of Dolphin Road in accordance with the plans theretofore prepared, such plans including the plan or plat theretofore prepared in April, 1949, as evidenced by Defendant's Exhibit No. 14; and further evidenced by a report of the Director of Public Works of the City of Dallas, dated October 11, 1949 (Defendant's Exhibit No. 12) referring to the widening of Dolphin Road in accordance with the recommendations made by the said Director of Public Works; and further evidenced by a notice of intention to improve Dolphin Road, dated October 11, 1949 (Defendant's Exhibit No. 13) which made references to the plans and specifications on file with the City of Dallas, said defendant's Exhibit No. 14 being a portion of said plans and specifications. The said dedication was further accepted by the City of Dallas by the issuing of building permits for the construction of dwellings on Lots A and B in said Block 2630, in accordance with the application for building permits made by the plaintiffs on December 27, 1948, as evidenced by defendant's Exhibits Nos. 8 and 9. I further find that on or about October 1, 1949, Mr. William Andress, attorney for Mr. Priolo, took up with the City Attorney of the City of Dallas, through Mr. Nichols, the fact that Priolo claimed there was no dedication and that he wished to settle that question and the other property question, and that on reference by Mr. Nichols, Mr. Andress took the matter up with the City Plan Commission of the City of Dallas, and stated to the Commission that there was no dedication.

"2. I further find that the plat prepared by the City of Dallas in April, 1949 shows the old road boundaries and is drawn to scale, shows that the proposed road includes the property purported to be dedicated in the instrument of dedication in question, and also shows other property to be included in the proposed road which was later acquired by condemnation. * * *."

paid City taxes assessed against the two lots in the subdivision, described therein as lots "A" and "B", Block 2630.

The recorded plat of November 10, 1948 constitutes on its face an express offer or undertaking on part of Priolo to dedicate the particular frontage to a public use. McQuillin, Municipal Corporations, 3rd Ed., sec. 33.24, p. 624. The effect of plaintiff's testimony is now that he intended only a subdivision of lots by the instrument, not extending to a dedication of property. As we have seen, this incipient dedication was accomplished through a conceded agent, and, notwithstanding plaintiff's repudiation in part, his testimony in such connection was relevant to, but not conclusive of the issue of intention to dedicate. Especially so, where plaintiff has obtained benefits by way of permits to build on the subdivided lots obviously on basis of the earlier recorded plat. The usual fact question (intent to dedicate, McQuillin, Municipal Corporations, 3rd Ed., sec. 33.41, p. 681) was thereby raised and found by the court in the affirmative. "* * * the cardinal rule of construction upon the subject of dedication by maps or plats is that which prevails respecting ordinary grants, and that is to discover and give effect to the intention of the party as manifested by his acts." City of Kaufman v. French, Tex.Civ.App., 171 S.W. 831, 834. And here we take note of appellants' rather ingenious portrayal of the plat as not showing on its face an intention to dedicate. Its plain import is quite to the contrary. By an inspection of the plat (here attached) and as appellee properly states, this strip of some 27' x 120' is "set apart from the building lots in the subdivision by a solid line, the other three sides (those to be erased, as it were, by the widening of Dolphin Road) shown by dotted lines, the exact dimensions of the dedicated strip shown upon its boundaries, and the strip itself labeled 'Dedicated for street widening.'"

Appellants tacitly admit to validity of the recorded subdivision of property as inclusive of dedication of the frontage in dispute, but argue nonacceptance by the City prior to Oct. 1, 1949, date of withdrawal by plaintiffs of the offer of the land for public use. They say: "If there had been an acceptance prior to that time, then there was a valid dedication; but if there had been no acceptance prior to that time, there was no dedication, and nothing that the City might thereafter do could revive the offer or extend the time. Therefore, resolutions and ordinances and other actions of the City Council and its representatives on October 11 and November 1, 1949, came too late, could not affect the rights of the parties, and were not material to any issue involved in the litigation." We agree that the April 1948 drawings on file in the Department of Public Works were insufficient proof of an acceptance of dedication by the City; which must derive from authoritative Council action, and is appropriately shown by ordinance of November 11, 1949. But as we view the matters at issue, the City's acceptance of this express offer of dedication, whether before or after October 1 (date of withdrawal in part), is not of controlling importance; our conclusions having a basis in the plain wording of Art. 974a, secs. 1 through 6, Vernon's Ann.Civ.St.

We have here a statutory dedication as well as an express one; the recorded instrument filed November 10, 1948 showing on its face as in compliance with the statute in matter of platting, attest of surveyor, approval by City Plan Commission, due acknowledgment, and recordation in office of County Clerk. Material parts of Art. 974a and subdivisions must be quoted, emphasis on various provisions being ours: Sec. 1 as amended Acts 1949, 51st Leg., requires "That hereafter every owner of any tract of land situated within the corporate limits * * * of any city in the State of Texas, who may hereafter divide the same in two or more parts for the purpose of laying out any subdivision of any tract of land * * *, shall cause a plat to be made thereof which shall accurately describe all of said subdivision or addition by metes and bounds * * *, and dimensions of all streets, alleys, * * * or other portions of same intended to be dedicated to public use * * *." Sec. 2:

"That every such plat shall be duly acknowledged by owners or proprietors of the land, or by some duly authorized agent of said owners or proprietors, in the manner required for the acknowledgment of deeds; and the said plat, *subject to the provisions contained in this Act,* shall be filed for record and be recorded in the office of the County Clerk of the County in which the land lies." Sec. 3: "That it shall be unlawful for the County Clerk of any county in which such land lies to receive or record any such plan, plat or replat, unless and until the same shall have been approved by the City Planning Commission of any city affected by this Act, * * *." Sec. 4: "If such plan or plat, or replat shall conform to the general plan of said city and its streets, alleys, parks, playgrounds and public utility facilities * * * and if same shall conform to such general rules and regulations, if any, governing plats and subdivisions of land falling within its jurisdiction as the governing body of such city may adopt and promulgate * * * then it shall be the duty of said City Planning Commission or of the governing body of such city, as the case may be, to endorse approval upon the plan, plat or replat submitted to it." Sec. 5: "That any such plan, plat or replat may be vacated by the proprietors of the land covered thereby at any time before the sale of any lot therein by a written instrument declaring the same to be vacated, duly executed, acknowledged and recorded in the same office as the plat to be vacated, *provided the approval of the City Planning Commission or governing body of such city, as the case may be, shall have been obtained as above provided,* and the execution and recordation of such shall

operate to destroy the force and effect of the recording of the plan, plat or replat so vacated. * * *" Sec. 6: "The approval of any such plan, plat, or replat shall not be deemed an acceptance of the proposed dedication and shall not impose any duty upon such city concerning the maintenance or improvement of any such dedicated parts until the proper authorities of said city shall have made actual appropriation of the same by entry, use or improvement."

 Prior to the enactment of Art. 974a and subdivisions, Acts 1927, 40th Leg., p. 342, until an offer of dedication was accepted in one of the three well-recognized methods, (1) by the municipality through proper authorities; (2) estoppel created by sale of lots to persons relying on such plat dedicating streets; or (3) actual public user, 14 T.J., sec. 23 et seq., pp. 713–718, such executory offer could be withdrawn. It is therefore with reference to a common law offer of dedication [2] that the foregoing methods of acceptance are applicable in contrast to an offer under the statute. "A common-law dedication by a plat may be revoked in whole or in part by the filing of an instrument vacating the plat or a part of it. Under some statutes a statutory dedication by plat can be withdrawn only by vacation of the plat in accordance with the provisions of the statutes." 26 C.J.S., Dedication, § 60, p. 149. See also McQuillin, Municipal Corporations, sec. 33.60, p. 749.

Section 5 of the cited statute, Art. 974a, has considerably abridged the "proprietor's" right in matter of withdrawal of his plat of dedication in whole or in part; being now limited to the following contin-

2. " 'Dedication' is a setting apart of land for the public use, and may be either statutory or at common law, the distinction between a statutory and a common-law dedication being that the statutory dedication operates as a grant, while the common-law dedication operates by way of estoppel in pais. Poindexter v. Schaffner, Tex.Civ.App., 162 S.W. 22, 23." 11 Words and Phrases, Dedication, p. 445. "Statutory dedication of street (R.S.1911, arts. 1004, 1005 [Vernon's Ann.Civ.St. arts. 1433, 3264]), is controlled by terms

of statute, and operates by way of a grant, while common-law dedication operates by way of estoppel in pais." City of Uvalde v. Stovall, Tex.Civ.App., 279 S.W. 889, syl. 3, (writ ref.).

And pertinent here, the statutes of some states are construed as not requiring that a map or plat of a subdivision or the dedication of a portion thereof, be accepted by the governmental authorities in order that it shall be binding on the plattor. See 11 A.L.R.2d, Annotations, p. 579.

954

gencies: (1) *Prior* to municipal acceptance and before sale of any lot therein, by filing a written instrument declaring the same to be vacated, duly executed, acknowledged, and recorded in the same office as the plat to be vacated, *provided the approval of the City Planning Commission shall have been obtained.* (2) *After* a sale of lots in the platted subdivision, the vacation is accomplished on application of all those to whom lots have been sold, plus approval of the City Planning Commission; and (3) *after* municipal acceptance of the proprietor's offer of dedication, consent of the City through its governing Council is required in lieu of approval by the City Plan Commission. This is so because municipal rights to the grant having vested, same cannot be divested "except by ordinances passed by vote of the majority of the governing body of the City, * * *." Sec. 133, Dallas City Charter.

▮ Manifestly, appellants here have not effectuated a withdrawal of the element of dedication from their recorded plat in accordance with the exclusive method now required by statute; and as stated in Ramstad v. Carr, 31 N.D. 504, 154 N.W. 195, 203, L.R.A.1916B, 1160: "The recording of the plat, and sale of lots by the owner with reference thereto, was a grant by the owner to the public of the public places marked on the plat. This grant, it is true, was not binding upon, or effective against, the municipality until accepted by it; but the tender of conveyance on the part of the owner continued until withdrawn by the owner, or until it was rejected by the municipality. *The statutes of this state fix, not only the method in which a dedication may be effected by the filing of a plat, but they also prescribe the manner in, and conditions under, which the plat may be vacated and the dedication revoked.*" (Emphasis ours.) Also, as held in Orange County v. Cole, Cal.App., 215 P.2d 41, 46: "'* * * affirmative expressions in a statute introducing a new rule imply a negative of all not within their purview.'" In view of Art. 974a and under the circumstances of this case, appellants' position of effectual withdrawal of dedication prior to acceptance by the City through its proper authorities must be regarded as untenable.

We are inclined to give full credence to Priolo's version of facts incident to execution of the plat and the untoward consequences to him. It might be further remarked as indeed regrettable that an adjustment of honest differences could not have been thereafter made, thus obviating onerous litigation. From standpoint of the municipality, however, appellants are in the attitude of wanting "to accept the benefits of the plat while avoiding its burdens."

No reversible error appears of record and accordingly the judgment under review must be affirmed.

DIXON, C. J., not sitting.