K.G.R., a Wisconsin general partnership, Plaintiff-Appellant-Cross Respondent,

v.

TOWN OF EAST TROY, Defendant-Respondent-Cross Appellant.†

Court of Appeals

*No. 92–2508. Submitted on briefs December 1, 1993.—Decided February 2, 1994.*

(Also reported in 513 N.W.2d 622.)

†Petition to review granted.

215

On behalf of the plaintiff-appellant-cross respondent, the cause was submitted on the briefs of *Chris J. Trebatoski, Toni L. Bonney* and *David A. Krutz* of *Michael, Best & Friedrich* of Milwaukee.

On behalf of the defendant-respondent-cross appellant, the cause was submitted on the briefs of *Gabrielle Boehm* and *Patrick J. Hudec* of *Hudec Law Offices, S.C.* of East Troy.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

SNYDER, J. K.G.R., a general partnership engaged in real estate development, appeals from a judgment establishing the Town of East Troy as the owner of a parcel of land by virtue of its acceptance in 1990 of a 1966 offer to dedicate the land to the Town for use as a public park. Because we hold that the death of a dedicator revokes a previously unaccepted offer, we reverse that portion of the judgment establishing the Town as the owner of the disputed land. The Town cross-appeals from that portion of the judgment invalidating an agreement between the Town and various landowners of a subdivision owned by K.G.R. requiring that the remaining lots in the subdivision be sold in pairs. Because we conclude that there was no evidence to support a contrary verdict, we affirm the trial court's directed verdict and that portion of the judgment holding the agreement unenforceable.

## FACTS

This case arises out of a dispute over a parcel of land located near Lake Beulah in the Town of East Troy. In 1953, Katherine Christenson recorded a plat of land known as Clearview Subdivision which contained three blocks.[1] Christenson designated a fifty-foot strip of land in the three blocks leading to Lake Beulah as a road known as Oak Ridge Avenue. After the 1953 platting, Christenson offered lots in Blocks 1 and 2 to prospective purchasers and claimed that they would have access to Lake Beulah via Oak Ridge Avenue. She also designated Block 3, which abuts Lake Beulah, for

---

[1] Additional factual history related to the disputed property is set forth in *Lake Beulah Protective & Improvement Ass'n v. Christenson*, 272 Wis. 493, 76 N.W.2d 276 (1956).

the use of launching and dry-docking the lot owners' watercraft.

In 1956, the supreme court issued a decision regarding Christenson's dedication of Block 3 and held, inter alia, that: (1) Oak Ridge Avenue had been properly dedicated and accepted by public usage as a public road, and (2) the remainder of Block 3 could not be used for boat launching and storage because such usage was contrary to the residential use restriction of the original deed and contrary to the residential zoning of Block 3. *See Lake Beulah Protective & Improvement Ass'n v. Christenson*, 272 Wis. 493, 497-98, 76 N.W.2d 276, 278 (1956). In 1966, Christenson filed certain amended plat restrictions for Clearview Subdivision, which contained an offer to dedicate Block 3 of the subdivision to the "public" and the "lot owners" as a public park.[2]

On August 31, 1968, Katherine transferred all of her rights in Clearview to Millard L. and Jennie B. Christenson. Katherine died on November 9, 1969. It is undisputed that prior to her death, the Town failed to

---

[2] The relevant restriction clause states the following:

The Wisconsin Supreme Court Decision August Term, 1955; Lake Beulah Protective and Improvement Association v. Christenson, 272 Wis. 493 defines public roads and the use of Block 3 in the subdivision of Clearview. This decision determines that all roads leading to, in and about the subdivision of Clearview are public roads and that the use of Block 3 dedicated to the lot owners in the subdivision of Clearview shall be for a residential use. The decision then determines that the use specified on Block 3 of the recorded plat of Clearview violates the restriction of residential use. However the dedication on Block 3 to the lot owners in the subdivision of Clearview continues unlimited. Henceforth, no other residential restriction remains on the use of Block 3 except County and Municipal Zoning Ordinances.

*Block 3 is therefore dedicated to the public and for the convenience of the lot owners in this subdivision as a public park.* [Emphasis added.]

take any action to accept her offer to dedicate Block 3 as a public park. The dedication remained unaccepted for approximately the next twenty years.

During the time after Katherine's death, ownership in the Clearview lots was transferred to various parties, including Floyd Roberts. In 1987, Roberts and some other lot owners in Blocks 1 and 2 signed an agreement with the Town of East Troy which purported to "double-up" most of the lots. Since the double-up agreement is the subject of the Town's cross-appeal, we will recite further relevant facts when addressing the cross-appeal in detail.

In March of 1989, K.G.R. obtained a majority of the Clearview subdivision lots by warranty deed from Liberty Bank, which had obtained the lots through a foreclosure action. Although the parties dispute the date K.G.R. acquired legal title to Block 3, it is clear that K.G.R. believed and acted as though it owned Block 3 by virtue of a quitclaim deed from Liberty Bank.[3] During negotiations and meetings with the town board, K.G.R. expressed concern over the restriction that reserved Block 3 for use as a public park. K.G.R. made it known that it wanted Block 3 to be park

---

[3] K.G.R. contends that the warranty deed obtained from Liberty Bank specifies that K.G.R. was given the quitclaim to any rights which Liberty had in Block 3. The Town asserts that K.G.R. did not acquire title to all of the property until March of 1991, after the statutory redemption period following a foreclosure on two of the lots in Block 2 and all of Block 3 had expired. The trial court found that K.G.R. did not obtain any rights to Block 3 by virtue of the quitclaim deed from Liberty Bank. Although we do not consider this issue to be dispositive, we will assume that the trial court's conclusion that K.G.R. did not obtain ownership rights in Block 3 until after the Town's efforts to accept the dedication of Block 3 is correct.

space for the exclusive use of the lot owners in the subdivision, which it apparently believed to be an important selling point for the further development of the subdivision.

At some point the town board became concerned that K.G.R. was ultimately planning further development of Block 3 contrary to the dedication and recorded restrictions. After a meeting on March 14, 1990, the Town passed a resolution formally accepting Christenson's 1966 offer to dedicate Block 3 as a public park.

K.G.R. filed suit seeking declaratory relief barring the Town from claiming any right or title to Block 3. K.G.R. alleged that the Town's claim to Block 3 was invalid because K.G.R. as a successor in interest to the property revoked the offer of dedication, the offer of dedication expired upon the death of the original dedicator, Katherine Christenson, or the Town was estopped from acceptance of the dedication based upon its conduct. K.G.R. also alleged that the lot double-up agreement signed by Roberts and the Town in 1987 was invalid. The Town subsequently moved for summary judgment declaring that both the 1966 offer dedicating Block 3 as a public park and the Town's acceptance in 1990 were valid and that the double-up agreement entered into with Roberts is binding on K.G.R. and any future owners.

The trial court granted summary judgment in part. The court determined that: (1) the death of a dedicator subsequent to the transfer of the dedicator's interest in the land did not revoke the dedication, and (2) K.G.R. was not the sole owner of all of Clearview Subdivision and therefore could not revoke the dedication. Consequently, the court ruled that unless estoppel was proved, Block 3 was a public park owned by the Town because it had been properly dedicated as

such and was accepted by the Town prior to any valid revocation of the dedication.

A six-member jury trial was held on the remaining issues of whether the Town was estopped by its conduct and dealings with K.G.R. from accepting Block 3 as a public park and whether K.G.R. was bound by the 1987 double-up agreement. After all of the evidence was presented, the trial court granted K.G.R.'s motion for directed verdict, holding that the double-up agreement was invalid. Regarding the estoppel issue, the jury found that the Town was not estopped from accepting the dedication. A judgment was subsequently entered declaring the Town as the owner of Block 3 and the double-up agreement invalid.

K.G.R. appeals from the portion of the judgment establishing the Town as the owner of Block 3 by virtue of its acceptance of the 1966 dedication. The Town cross-appeals from the portion of the judgment declaring the double-up agreement to be unenforceable.[4]

## OWNERSHIP OF BLOCK 3

The trial court granted the Town's motion for summary judgment, finding that the 1990 acceptance of the 1966 dedication of Block 3 was valid. The grant of summary judgment in this case depends on a legal question of first impression. Whether summary judgment should have been granted is a question of law. *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 651-52, 476 N.W.2d 593, 597 (Ct. App. 1991). We independently apply the summary judgment methodology set forth in

[4] Because Wisconsin case law does not address whether the death of a dedicator revokes an unaccepted offer to dedicate land, we certified this case to the Wisconsin Supreme Court, which declined to accept jurisdiction of the appeal.

§ 802.08(2), STATS., to the record de novo. *Wegner v. Heritage Mut. Ins. Co.*, 173 Wis. 2d 118, 123, 496 N.W.2d 140, 142 (Ct. App. 1992). Summary judgment should be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Because we conclude as a matter of law that the death of a dedicator revokes an unaccepted offer of dedication, we reverse that portion of the judgment establishing the Town as the owner of Block 3.

In order for a dedication of land to be complete, there must be both an offer and an acceptance in some form. *Galewski v. Noe*, 266 Wis. 7, 11, 62 N.W.2d 703, 705 (1954). " 'The essential requisites of a valid common-law dedication are that there must be an intent to dedicate on the part of the owner and an acceptance of the dedication by the proper public authorities or by general public user.' " *Id.* at 12, 62 N.W.2d at 706 (quoting *Knox v. Roehl*, 153 Wis. 239, 243, 140 N.W. 1121, 1122-23 (1913)). To be timely, acceptance must occur before the offer to dedicate is withdrawn or revoked. *Id.* at 14, 62 N.W.2d at 707.

Whether the death of a dedicator revokes an offer of dedication is a question of first impression in Wisconsin. Most jurisdictions which have considered the issue have ruled that a common-law dedication is revoked if no acceptance occurs before the death of the grantor.[5] We agree with the majority of jurisdictions

---

[5] *See* 11A EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 33.60, at 477 & 486 n.37 (3rd ed. rev. vol. 1991) (citing *Orange Co. v. Cole*, 215 P.2d 41 (Cal. Dist. Ct. App. 1950); *People v. Johnson*, 86 N.E. 676 (Ill. 1908); *Priolo v. Dallas*, 257 S.W.2d 947 (Tex. App. 1953)). *See also* 2 GEORGE W. THOMPSON,

and conclude that the death of the dedicator acts as an implied revocation of the offer to dedicate. Such a rule is analogous to the basic tenet of contract law which provides that an offeree's power of acceptance is terminated when either party dies. *See* RESTATEMENT (SECOND) OF CONTRACTS § 48, at 126 (1979); 1 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 5:2 (4th ed. 1990).

It is undisputed that Katherine offered to dedicate Block 3 in 1966 and that she died in 1969. It is further undisputed that the Town did not act to accept the offer until 1990. Applying the rule to these facts, Katherine's unaccepted offer to dedicate Block 3 terminated upon her death in 1969. Accordingly, the Town has no ownership interest in Block 3 because its acceptance of the offer was precluded by Katherine's intervening death.

The trial court held that the death of the dedicator did not revoke the offer to dedicate in this case because Katherine did not have an ownership interest in the property at the time of her death, having transferred it to Millard and Jennie Christenson. Therefore, Katherine "had no power to revoke the dedication herself, whether intentionally or by act of her death." Based upon our review of Wisconsin case law, we disagree.

COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY 372, at 501 & n.60 (repl. ed. 1961) (citing *Nichols Copper Co. v. Connolly*, 203 N.Y.S. 839 (N.Y. App. Div. 1924), *aff'd*, 148 N.E. 720 (N.Y. 1925)); 7 RICHARD R. POWELL, THE LAW OF REAL PROPERTY ¶ 926[2], at 84-98 & n.58 (rev. ed. 1993) (citing *Givens v. Commonwealth*, 244 S.W.2d 740 (Ky. Ct. App. 1951)); 26 C.J.S. *Dedication* § 60(a), at 549 (1956).

We note, however, that at least one jurisdiction has held that the grantor's death did not work a withdrawal of any intent to dedicate. *See Vetter v. Diamond State Tel. Co.*, 450 A.2d 877, 883 (Del. 1982).

A vast majority of jurisdictions have held that a successor in title, such as K.G.R. in this case, has the right to revoke a previously unaccepted offer of dedication.[6] However, the only case dealing with this issue in Wisconsin, *Schumski v. Village of Hales Corners*, 14 Wis. 2d 301, 111 N.W.2d 88 (1961), contains language directly contrary to the general rule. In *Schumski*, the heirs of Adam Conrad divided Conrad's farm into blocks with an area between the blocks for streets. In 1937, the Wolffs acquired adjoining tracts from two of the Conrad heirs which reserved a portion of the land for purposes of a public road. In 1955, the Wolffs conveyed the land to Schumski, but the reservation for road purposes was omitted from the Wolffs' deed. In 1958, the village of Hales Corners formally accepted the dedication for street purposes contained in the orig-

---

[6] *See, e.g.*, M.B. Elma, Annotation, *Revocation or Withdrawal of Dedication by Grantees or Successors in Interest of Dedicator*, 86 A.L.R.2d 860, 863-70 (1962) (citing *Forsyth v. Dunnagan*, 29 P. 770 (Cal. 1892); *Hunt v. Brewer*, 91 P.2d 485 (Col. 1939); *Marion Co. v. Gary*, 88 So. 2d 749 (Fla. 1956); *Moore v. City of Chicago*, 103 N.E. 583 (Ill. 1913); *Detroit v. Detroit & M. R. Co.*, 23 Mich. 173 (1871); *Lee v. Walker*, 68 S.E.2d 664 (N.C. 1952); *City of Brownwood v. Sullivan*, 28 S.W.2d 603 (Tex. Civ. App. 1930); *Payne v. Godwin*, 133 S.E. 481 (Va. 1926); *Smith v. King County*, 141 P. 695 (Wash. 1914). *See also* MCQUILLIN, *supra* note 5, at 477 & 486 n.38 (citing *Ketcher v. Mayor of North Little Rock*, 621 S.W.2d 12 (Ark. App. 1981); *Walton v. City of Clermont*, 109 So. 2d 403 (Fla. Dist. Ct. App.), *cert. denied*, 115 So. 2d 5 (Fla. 1959)); 23 AM. JUR. 2D *Dedication* § 26, at 23 (1983). A corollary to this general rule is that where there are two or more dedicators, grantees, or successors in interest of the dedicators, the offer to dedicate cannot be revoked or withdrawn without the consent of all the parties who have a legal interest in the lands subject to the offer of dedication. *See* 23 AM. JUR. 2D *Dedication* § 26, at 23 (1983).

inal deeds from the Conrad heirs to the Wolffs. *Id.* at 301-02, 111 N.W.2d at 89.

In denying Schumski's action to declare the acceptance invalid, the court stated, " 'A revocation can only be made by the one creating the dedication, *i.e.,* the original grantor.' " *Id.* at 306, 111 N.W.2d at 91 (quoting 11 EUGENE MCQUILLIN, A TREATISE ON THE LAW OF MUNICIPAL CORPORATIONS § 33.60, at 750 (3rd ed.). The court then reasoned:

> The reservations were made by the Conrad heirs for their benefit and for the benefit of persons acquiring tracts from them. The fact that the reservation was omitted from the Wolff deed to the plaintiffs could not operate as a revocation of the offer to dedicate made by the Conrads. *They [the Conrad heirs] were the only ones who could withdraw the reservation prior to acceptance.* [Emphasis added.]

*Id.*

Therefore, contrary to the general rule, *Schumski* holds that the original dedicator is the only one who can revoke an unaccepted offer of dedication, even where the dedicator no longer has an ownership interest in the dedicated land.[7] Applying the holding of *Schumski* to the present case, Christenson was the

---

[7] We note that the authority relied on by the supreme court for its holding in *Schumski v. Village of Hales Corners*, 14 Wis. 2d 301, 111 N.W.2d 88 (1961), has subsequently amended its restatement of the majority rule as follows: "A revocation can be made only by the one creating the dedication, that is the original grantor, *or his or her successor.*" *See* MCQUILLIN, *supra* note 5, at 477 (emphasis added).

only one who could have revoked the original offer of dedication.[8]

Our adoption of the majority rule that the death of a dedicator revokes an unaccepted offer of dedication is consistent with the holding of *Schumski*. Since Katherine was the only one who could revoke her offer of dedication, it follows that her death implicitly revokes the offer. If not, the offer could conceivably remain a cloud on the title *infinitum* given that Wisconsin does not appear to recognize the right of successors in title to revoke a previously unaccepted offer.

However, we also recognize the potential problem illustrated by the trial court in the following example:

> The plaintiff's argument carried to its logical extreme is that if a thirty-year-old landowner dedicated a portion of his land for purposes of a public road and then subdivided the land and thereafter transferred the land in various lots so that the grantor had nothing left, that nevertheless, at some distant time in the future, without regard to the rights of the transferees, that grantor could revoke the original dedication.

While this is true, such an argument illustrates the potential problems inherent in the rule announced in *Schumski* that only the original dedicator can revoke an offer of dedication, not the rule adopted here that the death of a dedicator revokes an unaccepted offer.[9]

---

[8] The parties extensively argued the issue of when K.G.R. acquired title to Block 3. *See supra* note 3. Since K.G.R. as successor in title did not have the power to revoke the unaccepted offer in the first place according to *Schumski*, this argument is of no significance to the outcome in this case.

[9] Given the court's holding in *Schumski* contrary to the majority rule, the dilemma remains that no matter which rule is

Were we writing on a clean slate, we would agree that the better rule would be that the successors in title have the right to revoke a previously unaccepted offer of dedication and that the subsequent death of the dedicator would not then affect the dedication because the successors would control the land. However, the court of appeals is primarily an error-correcting court and we are bound by the decisions of the Wisconsin Supreme Court. *State v. Ledger*, 175 Wis. 2d 116, 136, 499 N.W.2d 198, 206-07 (Ct. App. 1993) (Anderson, J., dissenting). "Even where we believe that a particular decision is incorrect and decisions from other jurisdictions are better reasoned, we are prevented from changing existing law as announced by our supreme court." *Id.* at 136, 499 N.W.2d at 207 (Anderson, J., dissenting) (citations omitted).

---

adopted regarding the effect of the death of the dedicator, the potential exists for the original grantor, who no longer owns any interest in the property, to control property and the actions of present owners. If the rule in Wisconsin is that the death of the dedicator revokes an unaccepted offer, then successors in title would have to wait until the grantor dies or decides to revoke an unaccepted offer before acquiring clear title or knowing the status of the dedicated land. Conversely, if the dedicator dies shortly after making an offer to dedicate land for a public park but before a municipality accepts the dedication, the public may lose the opportunity to use the land for its benefit. If the rule in Wisconsin is that the death of the dedicator does not affect the dedication, then an unaccepted dedication would cloud title to the dedicated land from the time of the dedicator's original offer until the time of acceptance, if ever, because a successor in title would not be able to revoke it. In this case, that time period was over twenty years. Our certification identified this dilemma in an effort to have the supreme court revisit its holding in *Schumski.*

In sum, we conclude that Katherine's death in 1969 implicitly revoked her unaccepted offer of dedication and that K.G.R. is therefore entitled to judgment as a matter of law. Accordingly, we reverse the trial court's grant of summary judgment with respect to ownership of Block 3 and direct the court to enter judgment establishing K.G.R as the owner of Block 3.

## CROSS-APPEAL

The Town's cross-appeal relates to the double-up agreement signed between the Town and Floyd Roberts which required that the lots in Clearview Subdivision be sold or transferred in pairs.[10] At the time of the agreement, there were seven owners of the various lots. It is undisputed that four of the lot owners failed to sign the agreement, including National Auto Sales, Inc., an inactive corporation of which Roberts was the sole shareholder at the time of the agreement. Instead, Roberts signed the agreement as the purported "authorized representative" of all of the owners.

The trial court granted K.G.R.'s motion for directed verdict at the close of trial to have the lot double-up agreement declared void. The court ruled that the agreement failed to comply with the statute of frauds related to real estate transactions, § 706.02, STATS., because the agreement failed to identify all of the parties which it intended to bind.[11] Additionally,

---

[10] The apparent rationale behind the agreement was that the lots were substandard in size, and selling them in pairs would bring them in compliance with current town and county minimum lot size requirements.

[11] Section 706.02, STATS., states in relevant part:

(1) Transactions under s. 706.01(1) shall not be valid unless evidenced by a conveyance which:

the agreement was invalid because § 706.03, STATS., 1987, required that two corporate officers sign any conveyance on behalf of a corporation.[12] Although Roberts signed the agreement, he testified that he was not signing on behalf of National Auto Sales and no other corporate officer signed the agreement. The court also ruled in postverdict motions that the defective agreement was not divisible such that it was enforceable against those principal lot owners who actually signed it.

The standard for reviewing whether the trial court erred in directing a verdict is whether, when viewing the evidence most favorably to the party against whom the verdict is sought to be directed, there is any evidence to support a contrary verdict or sustain a cause of action. *Carl v. Spickler Enters., Ltd.*, 165 Wis. 2d 611, 624, 478 N.W.2d 48, 53 (Ct. App. 1991). A verdict should be directed only when the evidence gives rise to no dispute as to material issues or when the evidence is so clear and convincing as to reasonably permit unbiased and impartial minds to come to but one conclusion. *Voith v. Buser*, 83 Wis. 2d 540, 550, 266 N.W.2d 304, 309 (1978).

On appeal, the Town alleges that any technical defect in the lot double-up agreement in terms of the

---

(a)  Identifies the parties; and

. . ..

(d)  Is signed by or on behalf of each of the grantors. . ..

[12] Section 706.03(2), STATS., 1987, states:

Unless a different authorization is recorded under sub. (3) or is contained in articles of incorporation adopted and filed pursuant to s. 180.70(2), any officer of a private corporation, *whose signature is attested by another officer*, is authorized to sign conveyances in the corporate name. [Emphasis added.]

statute of frauds may be cured by one of the equitable alternatives found in § 706.04, STATS. Under certain circumstances, § 706.04 allows enforcement "in whole or in part" of an invalid agreement under the statute of frauds under the doctrines of equity.[13] *See Spensley Feeds, Inc. v. Livingston Feed & Lumber, Inc.*, 128 Wis. 2d 279, 287-88, 381 N.W.2d 601, 605 (Ct. App. 1985).

However, Wisconsin still recognizes the difference between legal and equitable remedies. *Id.* at 288, 381 N.W.2d at 605. Before judgment can be entered in an equitable action, the trial court must find that all the facts necessary to entitle the plaintiff to judgment have been established by the evidence. *Id.* (citations omitted). Our review of the record reveals that the trial court made no findings or conclusions regarding any of the equitable exceptions in § 706.04(1)-(3), STATS.

The Town also argues that the statute of frauds is inapplicable because Roberts was acting with the apparent authority of the lot owners when he signed the agreement. In the alternative, the Town argues that the agreement is divisible and enforceable against those lot owners who signed the agreement. The Town concedes that it did not plead apparent authority or

---

[13] Section 706.04, STATS., provides in part:

**Equitable relief.** A transaction which does not satisfy one or more of the requirements of s. 706.02 may be enforceable in whole or in part under doctrines of equity, provided all of the elements of the transaction are clearly and satisfactorily proved and, in addition:

    **(1)** The deficiency of the conveyance may be supplied by reformation in equity; or

    **(2)** The party against whom enforcement is sought would be unjustly enriched if enforcement of the transaction were denied; or

    **(3)** The party against whom enforcement is sought is equitably estopped from asserting the deficiency.

divisibility as affirmative defenses to the statute of frauds. However, the Town argues that it is not precluded from asserting them now by virtue of § 802.09(2), STATS., which governs amendments to pleadings. The Town asserts that it presented evidence at trial to support its position with respect to such defenses and that K.G.R. did not object; therefore, the court should have allowed it to amend its pleadings in accordance with the evidence presented.

Section 802.09(2), STATS., is bifurcated into two parts that govern different fact situations. *Zobel v. Fenendael*, 127 Wis. 2d 382, 387, 379 N.W.2d 887, 890 (Ct. App. 1985), *cert. denied*, 479 U.S. 804 (1986). The first addresses a situation where the issues are tried by the express or implied consent of the parties.[14] If the trial court concludes that the parties consented to the trial of the issues, the court has no alternative but to conform the pleadings to the proof. *Id.* at 387-88, 379 N.W.2d at 890. The second part addresses a situation where an objection is made at trial that the evidence offered is not within the issues raised by the pleadings. *Id.* at 388, 379 N.W.2d at 890. In this situation, the statute grants the court discretion to allow the amendment.[15]

---

[14] Section 802.09, STATS., states in relevant part:

AMENDMENTS TO CONFORM TO THE EVIDENCE. If issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues.

[15] Section 802.09(2), STATS., states in relevant part:

Our reading of the record in this case reveals that neither of these two situations applies because the Town failed to introduce evidence specifically related to the defenses it now relies on. Regarding the issue of Roberts' apparent authority to act on behalf of all of the owners and National Auto Sales, evidence was introduced relating to Roberts' conduct and his belief that he was acting with the authority of all of the landowners. However, the principle of apparent authority includes not only acts by an agent justifying belief in the agency, but also "knowledge thereof of the party sought to be held . . . and . . . reliance thereon consistent with ordinary care and prudence." *Larkin v. Johnson*, 67 Wis. 2d 451, 457, 227 N.W.2d 90, 94 (1975). We conclude that the Town failed to offer evidence to prove the last two elements of apparent authority.

Further, evidence of Roberts' conduct as the alleged representative for all of the lot owners was also relevant to the threshold issue of the validity of the agreement under the statute of frauds. The mere fact that certain evidence at trial was arguably relevant to an issue not pled by the Town does not necessarily mean that the unpled issue was tried with the express or implied authority of K.G.R. Accordingly, we conclude that the trial court's refusal to amend the pleadings was not erroneous given that there was not sufficient evidence presented to support such amendments.

If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining the action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

■ The Town also seeks to partially enforce the agreement as to the landowners who actually signed the agreement. The burden is on the party seeking to enforce a contract to prove the contract is divisible and show facts which take the case out of the statute of frauds. *Spensley*, 128 Wis. 2d at 286, 381 N.W.2d at 604. We hold that the Town failed to sustain its burden to show facts which take the case out of the statute of frauds. Therefore, we affirm the trial court's conclusion that the contract was not divisible.

In sum, we conclude that the Town may not cure the defects of the agreement by the equitable alternatives in § 706.04, STATS., and the Town failed to present sufficient evidence as to its apparent authority and divisibility defenses so as to allow amendment of the pleadings. Therefore, because there is no remaining evidence to support a contrary verdict, we conclude that the trial court properly granted directed verdict in favor of K.G.R. Consequently, we affirm the portion of the judgment holding the double-up agreement unenforceable.

## FRIVOLOUS APPEAL

■ In connection with its arguments, K.G.R. filed a motion for fees, costs and reasonable attorney's fees pursuant to § 809.25, STATS., on the basis that the Town's cross-appeal was frivolous. We conclude that the Town's cross-appeal was not filed in bad faith and was not without any reasonable basis in law or equity. *See* § 809.25(3)(c). Accordingly, we deny the motion. K.G.R. also moved to strike the Town's reply brief in its cross-appeal on the basis that it raises new issues for the first time. We conclude that the reply brief properly

addresses K.G.R.'s cross-respondent brief and deny the motion.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.