K.G.R., a Wisconsin general partnership, Plaintiff-Appellant-Cross Respondent,

v.

TOWN OF EAST TROY, Defendant-Respondent-Cross Appellant-Petitioner.

Supreme Court

*No. 92–2508. Oral argument November 29, 1994.—Decided March 28, 1995.*

(Also reported in 529 N.W.2d 231.)

447

For the defendant-respondent-cross appellant-petitioner there were briefs by *Patrick J. Hudec, Gabrielle Boehm, Kimberly S. Allegretti* and *Hudec Law Offices, S.C.,* East Troy and oral argument by *Patrick J. Hudec.*

For the plaintiff-appellant-cross respondent there was a brief by *Chris J. Trebatoski, David A. Krutz* and *Michael, Best & Friedrich,* Milwaukee and oral argument by *Chris J. Trebatoski.*

HEFFERNAN, CHIEF JUSTICE. This is a review of a decision of the court of appeals[1] which held that, because the Town of East Troy did not accept Katherine Christenson's 1966 offer to dedicate Block 3 of the Clearview Subdivision to public use as a park prior to Katherine Christenson's death, death having revoked the offer, there was not a timely acceptance of the offer. According to the decision of the court of appeals, because the Town had not timely accepted the proposed dedication for park purposes, K.G.R. a real estate developer, which claimed to be the successor in interest to Katherine Christenson, was the owner of the parcel in question.

---

[1] *K.G.R. v. Town of East Troy,* 182 Wis. 2d 215, 513 N.W.2d 622 (Ct. App. 1994).

We conclude that the offer, despite the death of the dedicator, remained open as an offer running with the land and could be accepted until revoked by all the successors of Katherine Christenson holding an interest in the land embraced in the Clearview Subdivision platted by Christenson in 1953. We remand the cause because significant matters raised on appeal were not decided by the court of appeals, including whether K.G.R. had sufficient interest in all of the Subdivision to enable it to revoke the offer of dedication and if so whether it did in fact revoke the offer.

The issue in this case is whether, where a common law dedication has been offered and the dedicator dies before the acceptance, the offer is irrevocable because only the original dedicator may revoke or withdraw the offer. This is arguably the holding of *Schumski v. Village of Hales Corners.* 14 Wis. 2d 301, 111 N.W.2d 88 (1961).

To state the issue alternatively: Does the rule of *Schumski,* that only the original dedicator may revoke an unaccepted offer to dedicate, have any application when the dedicator is dead. The court of appeals concluded that it did apply.[2]

■

We conclude, however, in accordance with black letter contract law, that only if the dedicator dies seized of all the property in the subdivision is an unaccepted offer revoked by operation of law upon the death of the dedicator.

---

[2] We note that *Schumski* has been criticized as being "contrary" to majority holdings and "doubtful" status in the law. Annotation, *Revocation or Withdrawal of Dedication by Grantees or Successors in Interest of Dedicator,* 86 A.L.R.2d 860, 870 (1962)

If, however, as in the instant case, the original dedicator during life conveys all of the property, the subsequent death of the dedicator is irrelevant to whether the offer of dedication may be accepted. It remains subject to acceptance by the public authority unless all who have an interest in all the property of the original dedicator, subject to the dedication, agree to revoke the offer.

We address the facts which underlie this litigation.

In 1953 Katherine Christenson recorded the plat of Clearview Subdivision adjoining Lake Beulah in the Town of East Troy. A portion of that subdivision was designated in the plat for waterfront use by the owners of the subdivision. Litigation over the proposed use by the property was resolved by a decision of this court that waterfront use by subdivision owners violated deed restrictions and zoning regulations. *Lake Beulah Protective & Improvement Assn v. Christenson,* 272 Wis. 493, 76 N.W.2d 276 (1956).

That opinion is irrelevant to the issues in this case, but it led Katherine Christenson in 1966 to record an amended plat, containing an offer to dedicate Block 3, the same parcel that was the subject of controversy in the 1956 case, "to the public and for the convenience of the lot owners in this subdivision as a public park."[3]

---

[3] The amended plat contained the following:

The Wisconsin Supreme Court Decision August Term, 1955; Lake Beulah Protective and Improvement Association v. Christenson, 272 Wis. 493 defines public roads and the use of Block 3 in the subdivision of Clearview. This decision determines that all roads leading to, in and about the subdivision of Clearview are public roads and that the use of Block 3 dedicated to the lot owners in the subdivision of Clearview shall be for a residential use. The decision then determines that the use specified on Block 3 of the recorded plat of Clearview violates the restriction of residential use. How-

451

On August 31, 1968, Katherine Christenson conveyed all of the subdivision to Millard L. and Jennie B. Christenson. Katherine died on November 9, 1969, after divesting herself of all interest in the subdivision.

Thereafter, the ownership of the subdivision and the lots therein was passed to various parties. By 1989, K.G.R., a real estate development partnership, acquired a majority of the lots in the subdivision by warranty deed from Liberty Bank, a purchaser in a foreclosure sale. At about this time, K.G.R. also claimed it acquired title to Block 3 by virtue of a quitclaim deed from Liberty Bank.

From about September 1989, negotiations with the Town of East Troy made it apparent that K.G.R. was concerned that Block 3 had been offered in dedication to the public. K.G.R. indicated that it wished to preserve Block 3 for the use of the lot owners of the subdivision, because it felt the exclusive use by them would make the subdivision more readily saleable. On September 6, 1989, the attorney for K.G.R., during the course of negotiations with the Town Board, admitted that K.G.R. did not own all the property.

Because the town was concerned that K.G.R. would use Block 3 for purposes the Town Board considered contrary to the public interest, the Town Board on March 14, 1990, adopted a resolution formally accepting Katherine Christenson's 1966 offer to dedicate Block 3 as a public park.

ever the dedication on Block 3 to the lot owners in the subdivision of Clearview continues unlimited. Henceforth, no other residential restriction remains on the use of Block 3 except County and Municipal Zoning Ordinances.

*Block 3 is therefore dedicated to the public and for the convenience of the lot owners in this subdivision as a public park.*

Following this town action, K.G.R. brought a declaratory judgment action, asking that the circuit court determine that the town's purported acceptance was ineffective to perfect the dedication. K.G.R. alleged, alternatively, that, as Katherine Christenson's successor in interest, it had revoked the 1966 offer; that, in any event, the Christenson offer had been revoked as a matter of law when she died; and that, under the facts, the town was estopped from accepting the offer even were it not revoked.

Walworth County Circuit Court, Judge Robert J. Kennedy, held that the death of Katherine Christenson subsequent to the transfer of her title did not revoke the dedication. The court found as a fact that K.G.R. did not own all of the property when it purportedly, as the successor to all of Katherine Christenson's interest, revoked the offer to dedicate.[4]

Additionally, a six-person jury determined that the town was not estopped from accepting the offer of dedication. It appears, however, that estoppel was not addressed on appeal. The court of appeals found estop-

---

[4] While K.G.R. stated that it had taken the necessary steps to revoke, the record fails to reveal with clarity what those steps were. It is true that the record indicates that K.G.R. did not desire the dedication to the public, but we see nothing in the record that would amount to a revocation even were K.G.R. the successor to all of Katherine Christenson's interest. Because the trial court found as a fact that K.G.R. did not own all of the property, it concluded that nothing K.G.R. did, or could have done, would have constituted a revocation. However, K.G.R. in its appeal disputes, as a matter of law, the trial court's finding that it did not own all the property of the subdivision. This factual question—whether K.G.R. owned all of the property—must be addressed on remand. Only if it is determined that K.G.R. succeeded to all of Katherine Christenson's interest is its purported revocation significant.

pel irrelevant, because the offer had, by operation of law, been revoked upon the death of Katherine Christenson.

The circuit court declaratory judgment confirmed that the town was the acceptor of the dedication of Block 3. K.G.R. appealed the judgment, and the question of the legal sufficiency of the dedication was certified to this court. That certification was refused.

On the appeal, the court of appeals reversed the judgment of the circuit court that established the Town of East Troy was entitled to accept the 1966 offer to dedicate Block 3 to the public. The court of appeals relied upon *Schumski v. Village of Hales Corners, supra* at 306, which stated, quoting 11 McQuillin, *Municipal Corporations* (3d ed.), sec. 3360, p. 750, " 'A revocation can only be made by the one creating the dedication, *i.e.,* the original grantor.' "

The court of appeals questioned the correctness of this holding in *Schumski,* but, as an intermediate court of appeals, it concluded that it could not overrule a precedent established by this court. The court of appeals noted that "A vast majority of jurisdictions have held that a successor in title, such as K.G.R. in this case, has the right to revoke a previously unaccepted offer of dedication." 182 Wis. 2d 215, 225. It also noted that this court in *Schumski* had relied upon a statement in 11 McQuillin, *Municipal Corporations, supra* at 750, that revocation could only be made by the original grantor, but the court of appeals also noted that subsequent editions of McQuillin have been revised to add "or his or her successor." 182 Wis. 2d at 226.

Thus, the court of appeals implied that, were this court to reexamine the question, it would conclude that, where a subsequent purchaser has succeeded to

454

all of the grantor's interest, the successor owner or owners would be empowered to revoke the offer prior to acceptance. It concluded, however, that it was bound by what it considered to be the precedent of *Schumski* that, even where the original dedicator no longer had any interest in the property, only that original grantor could revoke the offer. However, the court of appeals supplemented *Schumski* by concluding that the death of the grantor revokes the offer by operation of law.[5]

This latter conclusion resulted in the court of appeals holding that, when Katherine died in 1969, the offer lapsed and the town could not accept that offer by resolution in 1990. The upshot of this, the court of appeals concluded, was that the town acquired no rights by the purported acceptance of the 1966 offer.

While this result logically follows under the court of appeals' view of the law, it does not logically follow that K.G.R. therefore owned Block 3. The latter would only be true if K.G.R. had either independently acquired title or was the successor to the full interest of Katherine Christenson. The record, as viewed by the court of appeals, belies either of these conclusions.[6]

---

[5] *Schumski* did not address what effect the death of the grantor had upon the offer to dedicate.

[6] It should be noted that the court of appeals did not dispute the trial court's finding that K.G.R. had not acquired title to Block 3 from the foreclosure purchaser by quitclaim deed and that, at the time the town, by resolution, purported to accept the dedication, K.G.R. did not own the entire tract or Block 3. The court of appeals, however, found this fact to be irrelevant because the offer was revoked at Katherine Christenson's death, but it is not irrelevant if the town was legally entitled to accept Katherine Christenson's unrevoked 1966 offer.

Moreover, the record in the posture *as viewed by the court of appeals* is clear that K.G.R. had not succeeded to all of Katherine Christenson's interest at the time the town accepted the

Thus, for the purpose of this opinion, we address the case in the posture in which it came to us, recognizing that factual matters regarding the ownership of the subdivision and possible estoppel need to be resolved on remand.

■

We return to the discussion of *Schumski.* We find no fault with the limited holding stated therein. The law, universally accepted, is that only the dedicator can revoke the offer to dedicate. But that statement is correct only under the limited circumstances apparently extant in *Schumski,* that the original grantors were living and continued to hold at least a part of the property subject to the dedication. The black letter rule of *Schumski* on which the court of appeals relied, although it recognized the infirmities of the rule, is subject to numerous qualifications which substantially swallow the rule in practical application.

Thus, we do not reconsider the holding of *Schumski* but expand upon its basic rule, which is of limited applicability.

---

offer. We point out, however, that K.G.R. appealed from the orders that held that K.G.R. had no interest in Block 3 or that K.G.R. did not have title to the whole subdivision. Because of the court of appeals decision that, as a matter of law, the offer to dedicate was revoked by Katherine Christenson's death, it did not find it necessary to address this portion of K.G.R.'s appeal or the estoppel question referred to above. Thus, the consequences of the Town Board's resolution of acceptance may well vary if on remand it is determined either that K.G.R. did in fact own all the subdivision, which would then raise the question of whether there was an adequate revocation by K.G.R., and, even were there not, whether the town was estopped to accept the 1966 offer.

In the instant case, the facts are very different from those of *Schumski*. The grantor here divested herself of all interest in the property prior to her death. The town pursued what we conclude is the correct theory of law—that the original offer is a continuing one that runs with the land.[7]

Because the offer and acceptance of dedication partake of some of the characteristics of a contract,[8] the death of the grantor, who continues to own all of the property subject to the dedication and its burden by operation of law, revokes the offer.

The logical consequence of the theory, a correct theory we conclude, that the offer to dedicate runs with the land when the original dedicator has conveyed all interest prior to death, has the effect of conferring these rights and obligations of the grantor on successor landowners. See, generally, 26 CJS, *Dedication,* sec. 58, p. 547. Thus, those who subsequently hold the land are bound by the offer that runs with the land unless the subsequent landowner or landowners who succeed

---

[7] The theories of both parties appear congruent to the extent that there is agreement that the death of the offeror still in full possession revokes the offer.

[8] See, 7 *Powell on Real Property,* para. 926, p. 84; *Kraus v. Gerrish Township, et al.,* 205 Mich. App. 25, 517 N.W.2d 756 (1994). See cases collected in 86 ALR2d 874 for proposition that "when there are two or more dedicators, grantees, or successors in interest of the dedicators, the offer to dedicate cannot be revoked or withdrawn without the consent of all . . .." Also see, 23 Am. Jur. 3d, para. 26, p. 23, which states that grantees may withdraw offer to dedicate; and *Ginter v. Webster Groves,* 349 S.W.2d (Mo. Div. No. 2, 1961) 895.

to the position of the original grantor revoke the offer in the same manner that the original grantor could prior to acceptance in accordance with standard contract law of offer, acceptance, and revocation.[9] Therefore, when an original grantor is divested of all of the rights in the land, the successive grantors by unanimous action can exercise the power of the original grantor. In the event the original grantor parts with a portion of the area subject to the original offer, he parts with a portion of the right to revoke and only by unanimous action of all the successors can the offer be revoked. See, Thompson, *Real Property,* vol. 2, pp. 460–61.

It is agreed that the right to dedicate land is concededly dependent upon the dedicator's title to the land. Hence, it seems apparent that, when the erstwhile landowner parts with the land in toto and the dedicatory offer runs with the land to successors, the status of the grantor, dead or alive, or his intent to revoke after parting with the land should be irrelevant.

We recognize that K.G.R. has cited cases, which appear to be reflective of a minority position, that the death of the original grantor under any circumstances effects the revocation of the offer of dedication. We agree with the discussion of the court of appeals in n.9, pp. 227–28,[10] that to espouse that minority position

[9] It should be noted, however, that "consideration" is not deemed an essential element of the dedicatory process. Powell, *supra,* n.19, pp. 84–85; see also, *White v. Moore,* 161 NYS 400, 403 (App. Div. 1914), which states, "[R]evocation must be made by all the parties who have a legal interest in the lands subject to the offer of dedication to public use."

[10] Footnote 9 reads as follows:

"Given the court's holding in *Schumski* contrary to the majority rule, the dilemma remains that no matter which rule is adopted regarding the effect of the death of the dedicator, the

results in long periods of uncertainty and can in itself cloud real estate titles. We agree with the court of appeals that the better law is "that the successors in title have the right to revoke a previously unaccepted offer of dedication and that the subsequent death of the dedicator would not then affect the dedication because the successors would control the land." 182 Wis. 2d at 228.

Applying these principles, which we deem to be declaratory of the better law, we hold that, where the grantor is fully divested of the property prior to death, the death of the grantor is irrelevant to the continuing offer of dedication, which may be accepted at any time[11] prior to revocation, which revocation must be by

---

potential exists for the original grantor, who no longer owns any interest in the property, to control property and the actions of present owners. If the rule in Wisconsin is that the death of the dedicator revokes an unaccepted offer, then successors in title would have to wait until the grantor dies or decides to revoke an unaccepted offer before acquiring clear title or knowing the status of the dedicated land. Conversely, if the dedicator dies shortly after making an offer to dedicate land for a public park but before a municipality accepts the dedication, the public may lose the opportunity to use the land for its benefit. If the rule in Wisconsin is that the death of the dedicator does not affect the dedication, then an unaccepted dedication would cloud title to the dedicated land from the time of the dedicator's original offer until the time of acceptance, if ever, because a successor in title would not be able to revoke it. In this case, that time period was over twenty years. . . ."

[11] We do not herein hold that an unrevoked offer to dedicate is open for perpetuity. In general, it is subject to acceptance within a reasonable time. The issue is not presented in this case.

the unanimous action of the successors, who then have an interest in the land originally offered for dedication. ■

As applied to this case, we conclude, relying on the facts stemming from the action for declaratory judgment, that Katherine Christenson's offer to dedicate remained open and could be accepted by the formal resolution of acceptance by the Town Board of the Town of East Troy. We therefore reverse the decision of the court of appeals. ■

We reiterate that portions of the appeal brought by K.G.R. were not resolved and, hence, the cause must be remanded to the court of appeals to determine whether (1) there is evidence which would in law estop the town from accepting the offer of dedication; (2) whether K.G.R. acquired by purchase or assignment at sheriff's sale prior to the running of the period of redemption of such interest in the property to make it the owner of all the grantor's original interest and, hence, able to revoke the offer of dedication;[12] and (3) whether an attorney who was a witness to events of the transaction be allowed to represent a party at trial and refer to his personal knowledge of the facts. We imply no judgment

---

[12] This is perhaps a determinative decision point, because K.G.R., although recognizing that it acquired a portion of the subdivision property by sheriff's sale at a time when the foreclosed owner retained a right to redeem, asserts that its title was such that it had sufficient ownership of all of the subdivision property as a successor to all of Katherine Christenson's interest to revoke the original offer of dedication. The nature of this interest acquired at sheriff's sale was an issue on appeal that the court of appeals deemed unnecessary to address as it originally viewed K.G.R.'s appeal.

in respect to any of these matters remanded for disposition by the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed and cause is remanded.